CARMER and another, Administrators, Appellants, vs. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Respondent.

|  |  |
|---|---|
| 95 | 513 |
| 102 | 521 |
| 95 | 513 |
| 108 | 133 |

*February 26 — March 16, 1897.*

*Negligence: Injury to child when crossing railroad.*

In an action against a railroad company for causing the death of an eight-year-old boy by negligence, there was evidence that at the place where he was killed there was a space between the tracks which was much used by children for play grounds, and a crossing over its three tracks constructed and planked by the railroad company, which was almost constantly used by the people, young and old, to pass from one side of the village to the other, and they frequently crawled under or climbed over trains standing there, without objection by the employees of the company; and that on the day such child was killed a long freight train had been standing over such crossing for nearly an hour, when he attempted to climb between the cars for the purpose of going home, and the train started and killed him, no trainman seeing him,— and there was conflicting evidence in respect to signals. *Held*, that the questions of negligence on the part of the defendant and contributory negligence on the part of the boy were for the jury to determine.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Reversed.*

The plaintiffs' intestate, a boy eight and one-half years of age, was run over and killed by a freight train operated by

the defendant at the village of Hawthorne, November 11, 1892; and this action is brought by the administrators of his estate, under the statute, to recover damages therefor. There was little dispute upon the trial as to the facts.

The village in question is a small hamlet on the line of defendant's road, containing at the time of the accident probably between 100 and 200 inhabitants; the houses being mostly built along the railway tracks, which at this point run nearly north and south. There were three tracks running through the entire village,— the main track, the side track on which cars were stored, which was east of the main track, and the passing track, which was used when trains passed each other, on the west side of, and about forty feet distant from, the main track. The two switch tracks were about 1,000 feet in length. At about the middle of the switch tracks the people of the village were accustomed to cross the three tracks from one side of the village to the other both on foot and with teams, and had been accustomed to so cross for several years before the accident. The railroad company had constructed plank crossings at this point over the main track and the east side track, but not over the passing track. A highway came up to this crossing on the east side, and another on the west side, but no legal highway had ever been laid across the railroad tracks. About 150 feet north of this crossing stood the depot, which was between the main and passing tracks, and the most of the buildings in the village were near the depot, on the west side of, and close to, the passing track. The people of the village used the space between the tracks indiscriminately for crossing the tracks, and children played between the main track and the passing track. The school house was upon the west side of the tracks, and about 200 feet south of the crossing. The school children were about thirty in number, about half of them coming from the east side of the village. On the day of the accident the plaint-

iffs' intestate had attended the morning session of school with two other boys. They got out of school a little before 11 o'clock a. m., and came down to the track, and found a freight train of twenty-eight cars standing on the passing track. They went south to the end of the train, and crossed the track to the east side, where one of the boys lived, and then returned north to the crossing, intending to go to the hotel on the west side of the track, where the intestate was living with his parents. The train was still standing on the passing track, and they stopped and played a while in the forty-foot space between the passing track and the main track. While the boys were here the intestate's father climbed through the standing freight train, and went eastward towards the mill pond to scale some logs. He told the intestate to be careful for the cars. After playing for a while the boys started to climb through the opening between two cars which stood over the crossing. Just as they had got well on one end of one of the cars, upon a small platform of what is called a gondola car, the train started with two or three jerks. The boy Roscoe was in the middle, between his comrades. The two companions succeeded in jumping off, one on either side, but the intestate was thrown down between the cars and run over and killed.

There is a dispute in the evidence as to whether any signals were given before the train started. No trainman saw the boys or knew of the accident at the time. The freight train had stood on the crossing nearly or quite fifty minutes, waiting for the passenger train from the north. Upon this state of the evidence a verdict for the defendant was directed and rendered, and from judgment thereon the plaintiffs appealed.

For the appellants there was a brief by *Hetzel & Smart*, attorneys, and *Howard Van Wyck*, of counsel, and oral argument by *E. M. Smart*. They argued, among other things, that the railroad company, having treated the crossing as a

highway and invited people to use it as such, was bound to exercise the same care there as if it was a strictly legal highway. *Coulter v. G. N. R. Co.* 5 N. Dak. 568; *Chicago, B. & Q. R. Co. v. Metcalf,* 44 Neb. 848; *Lillstrom v. N. P. R. Co.* 20 L. R. A. 587; *Webb v. P. & K. R. Co.* 57 Me. 117; *Kelly v. S. M. R. Co.* 28 Minn. 98; *Stewart v. Pa. R. Co.* 14 Am. & Eng. R. Cas. 679.

For the respondent there were separate briefs by *Pope & Perrin,* attorneys, and *L. K. Luse,* of counsel, and oral argument by *C. C. Pope.*

WINSLOW, J. Had the plaintiffs' intestate been an adult attempting to climb between the cars under the circumstances stated, it seems that he would have been guilty of contributory negligence as a matter of law. *Flynn v. Eastern R. Co.* 83 Wis. 238. There is no such hard and fast rule, however, applicable to children of the tender age of the intestate. Generally the question as to the degree of diligence required of the child must be submitted to the jury. *Whalen v. C. & N. W. R. Co.* 75 Wis. 654. Certainly the present is not a case where the court can say, as a matter of law, that the child was guilty of contributory negligence. *McVoy v. Oakes,* 91 Wis. 214. Contributory negligence not being shown as matter of law, the sole question is whether there is proof of negligence on the part of the employees of the railway company sufficient to go to the jury. There was much proof tending to show that the place where the boy was injured was a licensed way, within the decisions of this court. There seemed to be no substantial dispute on the question, but, even if there was a dispute, there was certainly ample evidence to require the submission of the question to the jury. *Mason v. C., St. P., M. & O. R. Co.* 89 Wis. 156. Not only did the proof tend to show that there was a licensed way, but it also tended strongly to show that the entire space between the depot and the crossing, including the

tracks, and the ground between the tracks, was almost constantly used by grown persons and children passing and repassing with the knowledge of the railway employees, and without objection to such use. Whatever may be the law in other jurisdictions, it is very well settled in this state that trains cannot be operated in such places in the same manner that they may be lawfully operated in the country. Such a state of facts calls for the exercise of some additional care in the movement of trains. The care to be exercised is undoubtedly that degree of care which is reasonably adequate to meet and avoid the dangers which ought to be anticipated under the circumstances. *Townley v. C., M. & St. P. R. Co.* 53 Wis. 626; *Whalen v. C. & N. W. R. Co.* 75 Wis. 654; *Johnson v. Lake Superior T. & T. Co.* 86 Wis. 64.

It was clearly a question for the jury in the present case to decide whether the trainmen ought, in the exercise of due care, to have anticipated that a child might be present on the track or on the cars when the train started, and, if so, whether some greater degree of care should have been exercised in giving warning of the starting of the train, or some greater precaution taken to guard against such an accident. The train had stood in that place for nearly an hour, blocking all the communication between the two sides of the village. The proof was ample to show that grown persons and children frequently crawled under or climbed over trains at that place under like circumstances. Upon this very day the conductor of the train saw children playing between the tracks and attempting to ride on the cars of his train when it pulled in. The question whether he and his colleagues in the management of the train exercised that degree of care when the train pulled out which ought to have been exercised, in view of the dangers to be reasonably anticipated, was a question for the jury.

*By the Court.*— Judgment reversed, and action remanded for a new trial.