San Antonio & Aransas Pass Railway Company v. William
Green.

Decided December 22, 1898.

**1. Railway Company—Negligent Personal Injury.**

A railway company is liable to a person for injuries sustained by the sudden
moving of a train standing upon a street crossing while he was attempting, in order
to reach a fire, to cross over the train between the cars by putting his hands on
two flat cars and his foot upon the drawheads, where at the time of moving the
train the engineer in charge of it knew that people were actually crossing over the
train to reach the fire, and of the danger to them in moving it, although he did not
see the party injured or know that he was in danger.

**2. Same—Contributory Negligence.**

One who, in hurrying to reach a fire, attempts to cross over a train obstructing
a street crossing by placing his hands on two flat cars and his foot upon the draw-
heads, is not guilty of such contributory negligence as will preclude a recovery for
injuries sustained by the moving of the train where the employes in charge of it
knew that the fire was raging, joined in giving the alarm, and a switchman was on
the ground at the crossing and the fireman and engineer at their places on the
engine, who must have seen that persons were constantly crossing over the train.

**3. Same—Evidence.**

Evidence in an action against a railway company for injuries sustained by the
sudden moving of a train obstructing a public crossing over which the injured per-
son was attempting to cross in order to reach a fire, that other persons crossed the
track just before and about the same time, is admissible as tending to show negli-
gence in moving the train, and the knowledge of the employes in charge of it that
persons were in danger when they moved it.

**4. Same—Charge of Court.**

A requested instruction that the fact that a train may have remained on a track
at a public crossing longer than five minutes in violation of a city ordinance would
not justify a person in the attempt to cross, is properly refused where there was a
number of other omitted facts bearing upon the same question.

**5. Damages for Personal Injury.**

A verdict for $8000 for personal injuries sustained by a young man 18 years old,
in good health, and earning $60 per month, resulting in the amputation of a foot,
is not excessive where the injury renders him incapable of attending to the business
in which he was engaged.

Appeal from Harris. Tried below before Hon. John G. Tod.

*O. T. Holt,* for appellant.

*Wheeler & Rhodes, Price & Green,* and *Fisher, Sears & Sherwood,*
for appellee.

Garrett, Chief Justice.—William Green brought this suit by
his father as next friend to recover of the San Antonio & Aransas Pass
Railway Company damages for personal injuries. There was a trial by
jury, which resulted in a judgment in favor of the plaintiff for the sum
of $8000. The injuries were received while the plaintiff was attempting
to pass over a train of the defendant which was standing across a public
street in the town of Yoakum, under the following circumstances.

Yoakum is a town of several thousand inhabitants. It is divided into two parts by the defendant's railroad; to the west of the railroad is the business portion of the town, while most of the residences are on the east side. William Green resided with his father west of the railroad. The plaintiff's father was engaged in a mercantile business and had a store in the west part of the town. After the son had gone to bed on the night of April 1, 1896, a fire broke out in the business part of the town near the store. His father awoke him and directed him to go to the fire as soon as he could. In going to the fire it was necessary to cross several tracks of defendant's railroad, the main line and sidings. He hurried along, and arriving at Gonzales Street crossing, where it was necessary for him to cross in order to reach the fire, he found a freight train resting on the first track at the crossing with an engine attached to it. He went around this train, but found the next track obstructed by a long train of cars. He attempted to cross over the train between the cars by putting his hands on two flat cars and his foot upon the drawheads. While his left foot was upon the drawheads the train was moved and the cars came together and crushed his foot so that it had to be amputated. A strong north wind was blowing; the houses of the town were built of inflammable material, and there was danger of the fire spreading until it reached the store. The alarm of fire was generally sounded. The whistles and the bells on the defendant's engines were being blown and rung as they usually were to give the alarm, and numbers of people were hurrying to the fire and crossing over the train at the Gonzales Street crossing. The crossing was lighted up by the glare of the flames and an electric light. Many people were crossing over the train at the time plaintiff attempted to cross. Defendant's servants in charge of the train saw them crossing, and knew that they were constantly crossing to go to the fire. Plaintiff testified that he did not think the cars would be moved. The place where he attempted to cross was on the Gonzales Street crossing. The cars had stood upon the crossing for more than five minutes. There was an ordinance of the city to prevent trains from obstructing street crossings for longer than five minutes at a time.

Plaintiff was 18 years of age at the time of the injury. He was engaged at work in his father's store as bookkeeper and clerk at a salary of $50 a month and his board. He can not do the work that he could before his injury, and can not join in the general sports of young men. He was a strong, robust, and active young man, and was in good health.

We conclude that the verdict of the jury is fully sustained by the evidence. The defendant's servants were not only negligent in moving the train under the circumstances, but at the time they moved it they knew that persons were actually crossing over the train and of the danger to them in moving it. It was not necessary for the application of the doctrine of discovered peril that they should have seen the plaintiff and known that he was in danger when they saw and knew that people were crossing the train at the moment of their moving it and in danger of being hurt. Taking into consideration the facts and circumstances at-

tending the attempt to cross the train, we do not think that the plaintiff was guilty of contributory negligence. A fire had broken out in the neighborhood of his father's store. A general alarm was being sounded, joined in by the whistles and bells on the defendant's engines. Hundreds of people were hurrying to the scene. They found the street crossing blocked by cars, but defendant's servants in charge of the train knew that the fire was raging and joined in giving the alarm. The evidence showed that a switchman was on the ground at the crossing and the fireman and engineer at their places on the engine. The fireman testified that he saw persons crossing, and that the engineer must have seen them. The train was still and people were constantly crossing. It was not unreasonable or imprudent for the plaintiff to conclude that the train would not be moved and that it was safe to cross.

The first, second, third, fourth, and fifth assignments of error are addressed to the action of the court in overruling the defendant's general demurrer and several special exceptions to the petition. It is contended that in the absence of an allegation that the defendant's servants and employes knew of the presence of plaintiff between the cars and that his safety would be endangered by moving the train, the petition showed no cause of action. This theory pervades the entire defense. The averment in the petition of knowledge on the part of defendant's servants in charge of the train that people were crossing the track going to the fire under the circumstances alleged showed that the defendant's servants were negligent in moving the train. The facts as proved at the trial and stated above were fully alleged in the petition. But if the defend-ant's liability depended upon the allegation that the defendant's servants and agents knew of the presence of plaintiff between the cars, and that his safety would be endangered by moving the train, it will be found in the following averment of the petition, to wit, "and plaintiff avers that the defendant company knew that at the time many persons were crossing and attempting to cross the said track and railroad train, and the crossing of the said persons going to said fire before and at the time plaintiff was injured was in plain view of and within the knowledge of the defendant company, its servants, and agents, and representatives," etc. Also: "Plaintiff avers that the said defendant company, through its agents and representatives, knew, or by the exercise of reasonable care, should have known, that other persons were passing the said train at that time, and that he was attempting to cross the said train to go to said fire, and that he was in the exercise of due care in attempting to cross over said train." A special demurrer addressed to these allegations was correctly overruled, but they become more pertinent in view of a paragraph of the charge of the court which has been assigned as error upon the question of discovered peril. It is set out in the fifth assignment of error and is as follows:

"That if, from the evidence, the jury believe that the plaintiff, in attempting to go between defendant's train of cars in the manner and under the circumstances which he did, was guilty of contributory negli-

gence, as hereinbefore defined, then the plaintiff can not recover, even though the jury may believe the defendant to have been guilty of negligence, and if they find the plaintiff to have been guilty of negligence they will find for the defendant, unless from the evidence the jury further believe that the defendant's employes operating said train, or some of them, saw and knew the plaintiff's position of danger in time, by the exercise of ordinary care, to avoid injury to plaintiff, then they will find for plaintiff, even though he was guilty of contributory negligence."

From the portion of the petition above recited and the facts stated, it clearly appears that this instruction did not submit an issue to the jury not made by pleadings and the evidence. It follows from what we have said also that the court did not err in refusing to give the charge set out in the twenty-fifth assignment of error.

The petition did not disclose any contributory negligence on the part of the plaintiff in attempting to make his way over the cars. It stated the facts fully showing that in attempting to cross he was in the exercise of due care. The averment that the wind was high and that the town was built of inflammable material was probably immaterial, and for the same reason the error, if any, of the court in not striking it out would not require a reversal of the judgment. The averment that the plaintiff awoke his son and directed him to go to the fire was also immaterial and not calculated to prejudice the defendant.

It was proper to receive the evidence of the witness L. B. Green and others to show that people were passing between the cars and that the witnesses themselves passed between them frequently, because this evidence showed a fact that bore directly upon the alleged negligence of the defendant in moving the train while people were crossing over. The first and ninth special instructions requested by the defendant were correctly refused. They were in effect peremptory instructions to find for the defendant. Since the defendant's liability did not depend upon the fact that the defendant's servants in charge of the train actually knew of the presence of Green in proper person in time to avoid injury to him, the special instructions numbers 12 and 13 requested by the defendant should not have been given.

The verdict is not excessive. The plaintiff was only 18 years of age, and was a strong and robust young man and in good health. He is maimed for life and can not do the work he formerly did or engage in the general sports of a young man. After his foot was amputated he was confined to his room for four weeks, during which time he could not get out at all, and after that he was confined to the house for four months. Changes in the weather sometimes produce pain in the leg from which the foot was amputated. He may be able to keep books as well, but he is badly maimed, and the prospects of an active and robust young man for general usefulness are destroyed. There being no error in the record, the judgment is affirmed.

*Affirmed.*

Writ of error refused.