## GESAS v. OREGON SHORT LINE R. CO.

### No. 1867. Decided December 21, 1907 (93 Pac. 274).

1. TRIAL — NONSUIT — MOTION — SPECIFICATION OF GROUNDS. A motion for nonsuit must specify wherein it is claimed the proof is deficient, so that plaintiff may supply it, if he is able to do so.[1]

2. SAME. Where, on motion for nonsuit, plaintiff offered to supply proof as to the points wherein it was claimed to be deficient, and such offer would have occasioned no unreasonable delay in, or interference with, the trial, he ought to have been permitted to do so, since, if not afforded such opportunity, the rule requiring specification of particulars on which the motion of nonsuit is based is in part rendered useless.

---

[1] Frank v. Bullion Beck, etc., Min. Co., 19 Utah 35, 56 Pac. 419; Skeen v. O. S. L. Rd. Co., 22 Utah 413, 62 Pac. 1020.

3. WITNESSES—COMPETENCY—MEANS OF KNOWLEDGE. That offered witnesses, in an action for injury sustained in attempting to pass between cars obstructing a crossing, were boys nine and twelve years old, who had been standing between trains and were climbing over the cars, did not authorize the court to conclusively assume that they had no such means or opportunity as to have heard the bell had it rung, or that there was such a want of attention on their part as to prevent their hearing it had it rung.[2]

4. TRIAL—NONSUIT. Where plaintiff's offer on a motion for nonsuit was not that offered witnesses would merely testify that they did not hear the bell, but that the bell did not ring, and the whistle did not blow, the court ought either to have assumed the fact in evidence as offered, or to have given plaintiff an opportunity to so prove it, and not merely have assumed the fact in evidence that witnesses did not hear the bell.

5. RAILROADS—OPERATION—DUTY TO USE CARE. The duty of a railroad company to use reasonable care in the operation of trains is not confined alone to crossings, but applies to all cases where the failure to exercise it may result in injury to others.

6. SAME—INJURIES TO PERSONS ON TRACK—EVIDENCE—SUFFICIENCY. Evidence, in an action for injury sustained in attempting to pass between cars obstructing a crossing, *held* to warrant a finding that the trainmen in the exercise of ordinary care ought to have anticipated that persons might be in the act of crossing, or be on or between or about the cars, and that not to give warning before moving the train would result in injury.

7. SAME. Where trainmen in charge of a train obstructing a crossing, in the exercise of ordinary care, ought to have anticipated that persons might be in the act of crossing, or be on or between or about the cars, and that not to give warning before moving the train would result in injury, it was their duty to give such warning and failure to do so was negligence.

8. SAME. Where railroad crossings had been obstructed for an hour or more, and many persons had passed between or over the cars to the trainmen's knowledge, negligence in moving the train without warning did not depend on notice to the trainmen that the particular person injured was between or on the cars or that his position was one of peril when the train was moved.

9. SAME—TRESPASSER. One who had remained at a railroad crossing obstructed by a train about half an hour, and then climbed on the cars for the purpose of crossing, was not a trespasser, to whom the railroad company owed no duty until it discovered his danger.

10. SAME—EVIDENCE—SUFFICIENCY. In an action for injury sustained in attempting to pass between cars obstructing a crossing, the railroad company's negligence *held* for the jury.

[2] Haun v. R. G. W. Ry. Co., 22 Utah 346, 62 Pac. 908.

11. NEGLIGENCE—DEGREE OF CARE REQUIRED—CHILDREN. The degree of care required of a child must be graduated to its age, capacity, and experience, and measured by what might ordinarily be expected from a child of like age, capacity, and experience under similar circumstances.

12. RAILROADS—INJURIES TO PERSONS ON TRACK—QUESTION FOR JURY. Whether a child eight years old was guilty of contributory negligence in attempting to cross between cars obstructing a railroad crossing, *held* for the jury.

APPEAL from District Court, Third District; M. L. Ritchie, Judge.

Action by Jesse Gesas, by his guardian *ad litem,* Morris Levy, against the Oregon Short Line Railroad Company. Judgment for defendant, and plaintiff appeals.

REVERSED AND REMANDED FOR A NEW TRIAL.

*Powers & Marioneaux,* for appellant.

*P. L. Williams, Geo. H. Smith,* and *J. G. Willis* for respondent.

### APPELLANT'S POINTS.

It is the duty of all persons seeing a child in a place of danger to give it warning. (*Devereaux v. Thornton,* 4 Ohio Dec. 449; *Railroad v. Toban,* 12 Tex. Civ. App. 283, 33 S. W. 894; *Davis v. Railroad,* 92 S. W. 831; *Railroad v. Boozer,* 2 Tex. 452; *McVoy v. Oaks,* 91 Wis. 214, 64 N. W. 748; *Railroad v. Tonahill,* 41 S. W. 875.)

In the case at bar the evidence does not show that (to use again the words of Justice Holmes), from "common experience," at this crossing the trainmen ought to have anticipated that a child might be present on the cars when the train started, but (to use the words of Justice Holmes again), the "special knowledge of the actor" ought to have required it to exercise ordinary care to discover whether a child might not be present on the cars when the train started. (*Carmer v. Railroad,* 70 N. W. 560; *Railroad v. Clark,* 20 C. C. A. 447; *Lartz v. Railroad,* 7 App. Div. 515; *Railroad v. Williams,* 37 Florida 406; *Shirk v. Railroad,* 14 Ind. App. 126; *Jones v. Harris,* 40 Atl. 791.)

The operatives of a train ought to leave a space between its

cars at a public crossing; failing to leave such space, there is an implied invitation to go over the cars. (*Golden v. Railroad*, 41 Atl. 302; *Railroad v. Green*, 49 S. W. 670.)

A jury might conclude that this conduct of the appellee in the present case, amounted to an implied assent or invitation to the appellant to cross between the cars of the train, which on the day of the accident, for so long a time closed the passage from his home to his place of labor. If so, the appellee was bound to exercise reasonable care to protect him in accomplishing the crossing, which he was with its consent, attempting to make. (*Swift v. Statton Island R. T. Co.*, 123 N. Y. 650, 25 N. E. 378; *Taylor v. Canal Co.*, 113 Penn. 162, 8 Atl. 43; 57 Am. Rep. 446; *Railroad v. Murowski*, 179 Ill. 77, 53 N. E. 572; *Clampit v. Railroad*, 84 Iowa 71, 50 N. W. 673.)

Here the court pointed out what he conceived was a defect in the evidence of plaintiff, and then refused to allow the defect to be remedied. It is in the interest of the public that if the testimony is available, and is offered under such circumstances, that it should be received. It prevents the expense of a retrial of the case. (*White v. Railroad*, 22 Utah 138; *Lewis v. Mining Co.*, 22 Utah 51; *Frank v. Mining Co.*, 19 Utah 35; *McIntyre v. Mining Co.*, 20 Utah 328; *Skeen v. Railroad*, 22 Utah. 413; *Wild v. Railroad*, 23 Utah 265; *McGarry v. Tanner Co.*, 21 Utah 16.)

## RESPONDENT'S POINTS.

The general rule with reference to contributory negligence of children is, under ordinary circumstances, whether or not the child exercised such care and caution as children of his own age and experience would usually, but where by the facts and the evidence and the appearance of the child, it is shown that he possessed such knowledge, such mental capacity as to know and understand and realize the nature and character of his act and the risks incident thereto, his negligence becomes a question of law, the same as in the case of adults, and he is to be judged, not by his age, but by his competency. (*Wendell v. Railroad*, 91 N. Y. 420; *Twist v. Railroad*, 39 Minn.

164, 12 Am. St. 626; *Egley v. O. R. & N. Co.,* 2 Wash. 409, 26 Pac. 973; *Studer v. So. Pac. Co.,* 121 Cal. 400, 66 Am. St. 39; *Marryman* v. *Railroad,* 85 Iowa 634, 5 N. W. 545; *Krenzer v. Railroad* [Ind.], 43 N. E. 649; *Raden v. Company,* 78 Ga. 47; *Masser v. Railroad,* 68 Iowa 602, 27 N. W. 776; *Railroad v. Bonison,* 70 Ga. 207; *Railroad v. Smith,* 77 Tex. 179; *Powers v. Railroad,* 57 Minn. 322, 59 N. W. 307; *Tucker v. Railroad,* 124 N. Y. 308.; *Gay v. Railroad,* 159 Mass. 238, 21 L. R. A. 448; *Wallace v. Railroad,* 165 Mass. 236; *Thompson v. Railroad,* 39 N. E. 709; *Motel v. Railroad,* 2 How. Prac. 30; *Railroad v. Lewis,* 79 Pa. St. 33.)

The plaintiff having the capacity and the understanding to know the danger and actually saying that he did know and appreciate it, as his conduct clearly shows from the testimony, that he did, he is to be charged with the consequences of his own act the same as an adult, and the uniform rule is that it is negligence, as a matter of law, to attempt to crawl under or between cars of a train. (*Studer v. So. Pac. Co.,* 53 Pac. 942, 121 Cal. 400; *Bollinger v. Railroad,* 47 La. Ann. 721, 49 Am. St. 379; *Concoran v. Railroad,* 105 Mo. 399, 24 Am. St. Rep. 394; *Powers v. Railroad,* 57 Minn. 332, 59 N. W. 307; *O. R. & N. Co. v. Egley,* 2 Wash. 409, 26 Pac. 973; *Gay v. Railroad,* 159 Mass. 238, 21 L. R. A. 448; *Wallace v. Railroad,* 165 Mass. 236, 42 N. E. 1125; *Ecliff v. Railroad,* 64 Mich. 196, 31 N. W. 180; *Railroad v. Rylee,* 87 Ga. 491, 13 L. R. A. 634; *Lewis v. Railroad,* 38 Md. 588; 3 Elliott on Railroads, sec. 1261.)

STRAUP, J.

This was an action brought by plaintiff to recover damages for personal injuries alleged to have been sustained by the negligence of the defendant. The accident occurred at Blackfoot, in the state of Idaho. The plaintiff, at the time of the accident, was eight years of age. It was alleged in the complaint that the defendant obstructed certain street crossings in Blackfoot for thirty minutes by suffering and permitting a train of freight cars to stand upon the street; that the plaintiff and other children desired to pass over one of the cross-

ings thus obstructed; before doing so the plaintiff inquired of the brakeman in charge of the train how long it would stand before the cars would be moved; that the brakeman told him that the cars would not be moved for half an hour; that while the plaintiff, relying upon what the brakeman told him, was attempting to pass between two cars, the servants of the defendant in charge of the train, and with knowledge of the plaintiff's presence, negligently, and without warning, moved the cars, by reason of which the plaintiff was injured. The answer was a general denial and a plea of contributory negligence. At the conclusion of plaintiff's case the defendant's motion for nonsuit was granted, from which judgment of nonsuit the plaintiff has prosecuted this appeal.

The evidence shows that the railroad tracks run north and south through the town of Blackfoot dividing the business district on the one side and the residence district on the other. Three crossings were blocked by two freight trains, one called the "Mackey" and the other the "St. Anthony" train, for something over an hour. Plaintiff's father testified: "I went to dinner about 12 o'clock. I went over first to Ellis street, crossing where I usually cross to my home, and I stood there for quite a while. I went to the third crossing in order to get over there. I had to walk across by the tank. It was pretty near a quarter to 1 o'clock before I got to dinner. It took me three-quarters of an hour to get across. The train held those crossings for three-quarters of an hour. The only means of crossing the tracks there on these three crossings was to get over the cars. If I didn't go over the cars, I would have had to walk above the water tank, three crossings and probably two blocks farther. At the crossing where the boy was hurt you couldn't cross at all, unless you went over the train or under it, and one would have to go around the train about six blocks either way if one went north or south. The last time I saw that train upon that track blocking that crossing was at 1:30 o'clock. . . . Plaintiff was eight years old at the time of the accident. He had been going to school two years and a half. The plaintiff himself testified: "I was wait-

ing there (at the crossing) about half an hour, and the brakeman came along and I asked him how long before the train would be going. He said it would be thirty minutes. . . . When I first saw that brakeman, I was by that first crossing towards the north, the one where I was hurt. We were right by the train when I asked the brakeman when the train would move. He was walking down by the train, and when he went past me I asked him, 'Brakey, how long before the train will be going?' and he said, 'thirty minutes.' Earl Rogers, Keeny Donell, Frank Dekay, and my older brother Charlie were with me. Charlie and the other boys was about two heads taller than myself. We were all there together when I spoke to the brakeman. My brother went over the top of the train. The brakeman went on up. When I asked him he said I had time if I wanted to. It was at the time my brother went over the train that the brakeman told me I had time to go if I wanted to. After the brakeman told me that I went over the couple. He said I had time. I went over what pulls the cars together so that the engine can pull them. The train gave a jerk, and I fell across the track. We saw men and other boys doing it, so we thought we could. After the brakeman said that to us I saw ten or fifteen other people doing it. I saw ten or eleven boys and men both going over ahead of me. I was going over to get some money so I could go to the show —to get a quarter from papa so I could go to the show that day. The show was on the other side of the track. It had not started yet. The brakeman said it would be thirty minutes before the train would go, and that I would have time. I and the other boys with me had waited there half an hour before we saw the brakeman and asked him that. There was two main tracks to get across. We was waiting there for half an hour for Mackay train to get loose. I thought when it left or separated we was all through. I didn't tell the brakeman I was going to climb under the cars. We just asked him if we had time to get over there. He said: 'You have thirty minutes. I suppose you have time.' My brother climbed the side ladder and went over the top, and then I started over the couplings. My foot was caught by the wheels when I fell. I asked

the brakeman because I wanted to know how long it was going to stay there before I attempted to go over. After the brakeman told me that the train wouldn't move for half an hour I didn't hear any warning, any bell ring, or any whistle blow. If I had heard a signal, the whistle or bell, I would know what is meant. When I went to go through that train I looked to see whether an engine was attached and I didn't see any. I looked both sides to see whether an engine was attached to that train or not, and I didn't see any engine at all." Charles Gesas testified: "We had been waiting at the crossing for about half an hour. We wanted to go across there. He [the plaintiff] asked the brakeman how long before the train would move and the brakeman said thirty minutes. My brother [the plaintiff] crawled over the couple. The couple gave a jerk and threw him down and cut his foot off. I crossed over the cars before he was run over. I never crossed between the couple. I did not attempt to cross over that car before the brakeman told my brother that. Other persons were crossing there, passing through between the train before I started to go over. There were men and children crossing. Ten or eleven crossed under the couples. Some crossed over where Jesse crossed over the bumpers. Others crossed on different cars over different couplings. We had been there about twenty or twenty-five minutes when the brakeman came along. There were two trains standing on these tracks. He was caught in the St. Anthony mixed train that was on the west track. The other train had uncoupled right there. We walked through. The engine had gone aways. Then we got in there, and was waiting for the other one to get out, and the brakeman came walking down between them. Then we couldn't get out or in. The brakeman was between the trains when we spoke to him. The people were climbing over both of them until the one opened, and as soon as the other one opened they went through until it closed up. As soon as it closed up they had to go over them again." Earl Rogers testified: "There was a whole lot more boys around there, but me and Charlie and them three stood together. I saw a brakeman there. Jesse asked him how long before the train would go,

and he said it would be half an hour before it would move. Charlie went over the cars. Jesse tried to go through the couplings and it bumped and knocked him down. I saw the wheel pass over his leg. After the first train parted and let us though there we waited a little while close to the other train as we could get. Boys were going right through where Jesse did, and up above; also some men." A Mr. Hilliard testified that for fourteen or fifteen years he had been acquainted with the tracks and the depot at Blackfoot, and was familiar with the running of the trains; that when a train came in the conductor ordinarily got off the caboose when it was in motion and went to the operator, got his orders, and then proceeded to the warehouse to unload; that after the train came to a stop at Blackfoot signals were given before it was moved, and that the signals would be given either by the head brakeman, the rear brakeman, or the conductor. The foregoing is a substantial statement of the evidence, except the testimony of plaintiff relating to his knowledge of the danger, which will be referred to later.

The defendant's motion was based upon the grounds that the evidence was insufficient to show negligence on the part of the defendant, and that the evidence showed contributory negligence upon plaintiff's part. After the motion had been argued, the court, in reviewing the evidence among other things, observed that it had not been sufficiently shown that the injury occurred on a crossing, or that the train was moved without ringing the bell or blowing the whistle, and, for these reasons, intimated that the evidence was insufficient to show negligence upon the part of the defendant, and that in such view of the case it was not necessary to pass on the question of contributory negligence. Thereupon counsel for plaintiff stated: "In view of what your honor said about the evidence being somewhat obscure as to whether this accident happened on a crossing or not—

The Court: A little later I assume that I will treat it as though it did occur on a crossing. Counsel for Plaintiff: In view of what your honor said about the testimony of the plaintiff not being plain that a bell did not ring, we would like to

call the other boys to prove that it did not. The Court: I suppose they would swear they did not hear it, and the court, under those circumstances, would not submit it to a jury. That is one of the points that testimony is always in conflict. People standing around always swear they did not hear it, and railroad people swear they did. If that is all there is to it even assuming the boys all swear they did not hear the bell ring— Counsel for Plaintiff: (Interrupting.) The Court: I do not think it is necessary to argue it any further. Counsel for Plaintiff: I do not want to argue it. I simply want to ask your honor to allow me to call Charlie Gesas and Earl Rogers to testify whether or not the bell rang or the whistle blew. And I offer to prove by Charlie Gesas and Earl Rogers that the bell did not ring and the whistle did not blow." Thereupon defendant's counsel objected on the grounds that the offer came too late, and that the testimony offered was irrelevant and immaterial, and would not change the situation. The Court: "If there were any real reason to suppose it would throw and additional light upon it, the mere fact that the application comes too late would not be refused, but the witnesses could not testify that the bell did not ring because it was manifest, standing between two trains, they could not see the bell. They might testify they did not hear it. The court will give you the benefit of that as though it were in evidence, and the application is refused." The motion for nonsuit was thereupon granted.

When the plaintiff rested his case, the only evidence that the train had moved without warning was the plaintiff's testimony that after the brakeman told him that the train would not move for half an hour, and before he attempted to go through, he did not hear the bell ring nor the whistle blow, nor anything to give warning that the train was going to start. We need not consider the question whether this evidence was sufficient to have carried the case to the jury on this point, for the court, after the attention of plaintiff's counsel was called to a want of evidence in this regard, ought to have granted plaintiff's request to supply it. It is well settled in this jurisdiction that a party making a motion for nonsuit

is required to "specifically state the grounds upon which the motion is based, and thereby call the attention of the court and opposing counsel to the point on which he relies." (*Frank* v. *Bullion Beck, etc., Min Co.,* 19 Utah 35, 56 Pac. 419; *Skeen v. O. S. L. R. Co.,* 22 Utah, 413, 62 Pac. 1020.) As stated in the foregoing authorities, the purpose of requiring such specifications is to apprise the plaintiff of the particulars wherein it is claimed his proof is deficient, so that he may supply it if he is able to do so, and prevent the expense and necessity of a retrial of the case. If the plaintiff is not afforded such opportunity, upon the making of an offer such as here, occasioning no unreasonable delay in, nor interfering with, the progress of the trial, the rule requiring specifications of particulars upon which the motion is based is, in part, rendered useless. The court, however, did not refuse the proferred evidence because it came too late, but on the assumption that the witnesses by whom it was offered to show the fact did not possess sufficient knowledge to testify to it, because, standing between the two trains at the time in question, they could not see the bell, and hence could only testify that they did not hear it. To such extent the court treated the proffered testimony as in evidence; but, assuming that the fact is always in conflict, and that people standing around always swear that they did not hear it and railroad people swear they did, he would not, under such circumstances, submit the question to the jury. We do not think, however, the court meant to say that the offer was denied, nor that he declined to submit the question to the jury, because the fact offered to be proved was generally in conflict, nor that it would likely be denied by witnesses for the defendant, nor that one did not possess sufficient knowledge to testify concerning it unless he saw the bell, nor that the court meant just what his language fairly imports. We think all the court meant by the observations was that, in view of the surroundings of the witnesses, their situation at the time, and of their lack of attention, it was not probable that they would have heard a bell had it rung, particularly not the bell of the train in question. And the negative testimony of the witnesses

that they, under the circumstances which had already been disclosed to the court, did not hear it, would not be sufficient evidence that it did not ring, especially when, as is generally the case, there is some positive testimony that the bell did ring. Undoubtedly there may be a variety of cases where the circumstances are such that the court may conclusively assume that if the bell had rung the witness would not have heard it and his testimony that he did not hear it would not be sufficient evidence to prove the fact that it did not ring. But this was not such a case. Here the means and opportunity of hearing and knowing the fact by the witnesses had been sufficiently shown, especially by the older boy who at the time of the accident had just climbed or was climbing over the top of the car. If not, the plaintiff had the right to show their means of knowledge. That they were boys, nine and twelve years of age, who had been standing between the trains, and were climbing over the cars on their way to carry placards in the parade, did not authorize the court to conclusively assume that they had no such means or opportunity, or that there was such a want of attention on their part as to prevent their hearing the bell had it rung. The remarks of the court were more pertinent to the weight of the testimony than to its competency. (*Haun v. R. G. W. Ry. Co.,* 22 Utah, 346, 62 Pac. 908.) Furthermore, the plaintiff's offer was not that the witnesses would merely testify that they did not hear the bell, but "that the bell did not ring and the whistle did not blow." The court ought either to have assumed the fact in evidence as offered, or to have given the plaintiff an opportunity to so prove it. The court did neither. We will therefore review the ruling granting the motion for nonsuit from the standpoint that the train was put in motion without warning.

It is in effect urged by the respondent that no duty of giving warning before moving the train was imposed upon it, and hence it was not negligent in failing to do so. This claim is made on the grounds that the requirement to give warnings and signals applies only to cases where the train is approaching crossings, or is being operated along or across

streets of a town or city; that the duty is owing only to those who are ahead of the engine or train; and that the plaintiff was a tresspasser to whom the defendant owed no duty until he was discovered in a place of danger. We think neither of the positions tenable. Because the duty to give signals at crossings and when trains are being run through towns or cities is generally imposed by statute or ordinance, it does not follow that such duty is alone confined to such cases, or that it exists merely because its performance is required by statute or ordinance. It may well exist independent of any statute or ordinance, when measured by the standard of ordinary care and prudence. The rule of law which requires railroad companies to use reasonable and ordinary care in the operation and handling of their trains and cars so as not to injure others is not confined alone to crossings. It applies to all cases where, from all the circumstances surrounding the case, care and prudence are required of them, and where the failure to exercise it may result in injury to others. Railroad companies, like natural persons, must so use their own property and privileges as not to injure the rights of others, and in running and operating their cars they must exercise care proportioned to the danger of injury to others. When in the exercise of such care ordinary caution and prudence require the giving of signals or warning, the failure to do so is negligence. In the case in hand it is made to appear: That the crossings had been blocked by the defendant for about one hour. That many persons of the town had been attracted by some kind of a show or parade about to take place. Some of them were about the street at the crossings and near the track where the cars stood. A number of them had crossed between the cars and over them. It is but fair to presume that the train operatives well knew these things, or that they, in the exercise of ordinary care, ought to have known them. Moreover, there is evidence in the record that men and boys, in the presence of the brakeman, passed between and over the cars. It was well observed by Mr. Justice Holmes in the case of *Schlemmer*

v. *Buffalo, Rochester, etc., Ry.*, 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681:

"Negligence consists in conduct which common experience or the special knowledge of the actor shows to be so likely to produce the result complained of, under the circumstances known to the actor, that he is held answerable for that result, although it was not certain, intended, or foreseen."

Aside from the knowledge possessed by the brakeman that the plaintiff and his companions and others, were about the cars, a jury may well find from all the circumstances that the train operatives, in the exercise of ordinary care, ought to have anticipated that persons might be in the act of crossing, or be on or between or about the cars, and that not to give warning before moving the train would result in injury. In a case where the facts were quite similar to those before us, where a boy eight and one half years of age "attempted to climb between the cars for the purpose of going to his home and the train started and killed him," it was said:

"Whatever may be the law in other jurisdictions, it is very well settled in this state that trains cannot be operated in such places in the same manner that they may be lawfully operated in the country. Such a state of facts calls for the exercise of some additional care in the movement of trains. The care to be exercised is undoubtedly that degree of care which is reasonably adequate to meet and avoid the dangers which ought to be anticipated under the circumstances. (*Townley v. Railway Co.*, 53 Wis. 626, 11 N. W. 55; *Whalen v. Railway Co.*, 75 Wis. 654, 44 N. W. 849; *Johnson v. Transfer Co.*, 86 Wis. 64, 56 N. W. 161.) It was clearly a question for the jury in the present case to decide whether the trainmen ought, in the exercise of due care, to have anticipated that a child might be present on the track or on the cars when the train started, and, if so, whether some greater degree of care should have been exercised in giving warning of the starting of the train, or some greater precaution taken to guard against such an accident. The train had stood in that place for nearly an hour, blocking all the communication between the two sides of the village. The proof was ample to show that grown persons and children frequently crawled under or climbed over trains at that place under like circumstances. Upon this very day the conductor of the train saw children playing between the tracks and attempting to ride on the cars of his train when it pulled in. The question whether he and his colleagues in the management of the train exercised that degree of care when the train pulled out which ought to have been exercised, in view of the dangers to be reasonably anticipated, was a question for the jury." (*Carmer v. Chicago, St. P., M. & O. Ry Co.*, 95 Wis. 513, 70 N. W. 560.)

Nor did the defendant's negligence in moving the train depend upon notice to the employees that the particular person injured was between or on the cars, or that his position was one of peril when the train was moved, where the crossings had been obstructed for an hour or more and many persons had passed between or over the cars, to the knowledge of the defendant's employees. (*San Antonio & A. P. Ry. Co. v. Green,* 49 S. W. 670, 20 Tex. Civ. App. 5.) The plaintiff was not a trespasser, and therefore the contention made that no duty was owing from the defendant until he was discovered in a place of danger is not sound. The evidence tends to show that the plaintiff was rightfully upon the crossing. He was at a place where he had a right to be. His right to the use of the crossing was in most respects mutual, reciprocal, and equal with that of the defendant, except as to the right of way of passage. He had remained at the crossing about half an hour, waiting for the removal of the obstruction. His climbing upon the cars, under the circumstances, for the purpose of crossing and passing over the obstruction, did not make him a trespasser. (*Littlejohn* v. *Richmond & D. R. Co.,* 49 S. C. 12, 26 S. E. 967; *Mayer* v. *C. & A. R. R. Co.,* 63 Ill. App. 309; *Krenzer* v. *Pittsburg, C., C. & St. L. Ry. Co.,* 151 Ind. 587, 43 N. E. 649, 68 Am. St. Rep. 252.) We think the evidence sufficient on the question of the defendant's negligence to let the case to the jury.

We now come to a consideration of the question of contributory negligence. Even an adult may or may not be guilty of negligence, depending upon the circumstances of the case, in climbing over stationary cars obstructing a crossing. In some cases he may be guilty of negligence as matter of law; in others, it is a question of fact for the jury. This is well illustrated in the following cases: *Corcoran* v. *St. Louis, I. M. & S. Ry. Co.,* 105 Mo. 399; 16 S. W. 411, 24 Am. St. Rep. 394; *Sheridan* v. *B. & O. R. Co.,* 101 Md. 50, 60 Atl. 280. In the first case the plaintiff was held guilty of negligence as matter of law, where it appeared he attempted to climb over stationary cars without looking to see or knowing

whether they were attached to an engine, or were liable to be moved at any time, although the cars were obstructing the street crossing in violation of the city ordinance. In the other case the plaintiff, on his way to dinner, in approaching the crossing, found it blocked by a long freight train. He met a brakeman of the train, who told him to jump over it, but he crawled underneath the cars and crossed in that way. On his return from dinner, going towards the factory where he was employed, he found the train still standing across the street. He met the same brakeman, who again told him to cross the train. The plaintiff hesitated to do so, when the brakeman told him he had plenty of time, and further stated: "We cannot leave here until we get a helper, and probably we will be here an hour," and said that a signal had to be given the engine ahead before starting the train. The plaintiff thereupon took hold of two cars and attempted to get upon the bumpers between them, so as to cross over the train, but just as he got his foot on the bumpers, the train started without signal or warning, and crushed his foot between the bumpers. In holding that the plaintiff was not guilty of negligence, the court said:

"The appellant does not appear to have attempted to make the crossing in a negligent manner. To cross over the bumpers between two freight cars when at rest is not necessarily a dangerous operation. The peril of the situation arises from the danger of the cars starting before the crossing is completed. In the present case the appellant used reasonable care to ascertain when the train would start by making inquiry of one of the brakemen in charge of it, who informed him that it would remain for some time longer until a helping engine came, which would signal its approach by blowing a whistle. Assuming that the appellant had the implied assent of the appellee to make this crossing, we do not think it can be said as a matter of law that he was guilty of contributory negligence in attempting to make it in the manner appearing from the evidence."

The case is somewhat stronger in its facts than is the one in hand in the particulars that the plaintiff was there informed that a signal would be given before the train would be moved, and was invited by the brakeman to cross, while here the brakeman told the plaintiff he would have time to cross

if he wanted to. But it must be remembered that the conduct of a boy eight years of age is not to be judged by the standard applied to an adult. It may well be that the statement made to the boy, if it did not amount to an implied invitation to cross, nevertheless was so understood by him. Though the statement was not an invitation to cross, and though the boy was not justified in accepting it as such, nevertheless it well tended to induce or at least influence him in believing that the cars would not be moved for some time, and that the crossing could be made by him in safety, especially when considered in connection with the other circumstance that he saw others doing so with apparent ease and in safety. The degree of care required of a child must be graduated to its age, capacity, and experience, and must be measured by what might ordinarily be expected from a child of like age, capacity, and experience under similar conditions. If it acted as might reasonably be expected of such a child, it cannot be charged with contributory negligence. It, however, is urged that, notwithstanding plaintiff's age, he had sufficient capacity to know and understand the character of his act and the risks incident thereto, and for that reason his conduct was to be measured by the same standard as is applied to an adult. This is principally based upon the following testimony given by plaintiff on cross-examination: "Q. You knew when you started to cross if the train was standing there it was likely to go most any time? A. I thought— When the Mackay train left, we thought we was all through. Q. When it separated—you didn't know the other train was there until it separated? A. No; we was waiting there for half an hour. Q. You don't know how long the other train had been there, and when it came there? A No; the Mackay train was there half an hour. Q. Of course you knew that when a train is standing on the track it is likely to move at any time. You never know when it is going to move? A. No. That is right. Q. You knew that you were taking chances when you undertook to crawl under or over the train, didn't you? A. Yes. Q. You knew— A. I didn't think nothing at the time.

Q. I understand. But when you stop to think about it you knew then and do now that it was a dangerous thing to go under or over a train because you don't know when it might start? A. I did'nt think of it at all when I done it. Q. If you had stopped to think you would have known it would be dangerous? A. Yes. I think it now after it is already done. Q. You knew that the couplers that were there were not made to stand on, walk across the train on, didn't you? A. I saw so many people do it. Q. But you knew that was not what it was provided for? A. I know it. I know it was provided just to pull the train along. Q. It was not for people to ride or stand on or anything of the kind? A. No. . . . Q. And you knew if it did move and you were under it or on it somewhere it might shake you off and run over you? A. Yes; I didn't think of that at the time though. Q. You didn't stop to think, did you? A. No. Q. You thought you would get across before it would start? A. Yes, sir; the brakeman told me I would have time. Q. You knew that if it was likely to start you wouldn't have started to go through there if it was going to start? A. No, sir. Q. And you wouldn't have done that because you knew it would be dangerous? A. I know I wouldn't. Wouldn't take chances on my life like that if I knew it was going to go. Q. It was because you thought it was not going to go that made you climb through there? A. Yes. Q. If you thought it was going to go you wouldn't have risked your life, as you say, by going through there? A. This brakeman ought to give me a kick and sent me away from there, knocked me out of there. That is the way I think of it now." This testimony shows that the boy possessed some knowledge that danger was involved in an act of climbing over cars if they were set in motion. But it also shows, especially when read with his testimony on direct examination, that he, from what the brakeman told him, did not anticipate that the cars might be moved. The danger to which he was exposed arose from the starting of the train. The happening of the thing which made his undertaking dangerous was not expected by him. He thought there was no danger because he did not expect the

train to move. So thinking and so believing he acted. Is he to be charged with negligence as matter of law because he did not think otherwise, and did·not anticipate that the cars might be moved, notwithstanding what the brakeman told him, the length of time the cars had stood blocking the crossing, and what he saw others doing? We think not. Furthermore, the testimony does not so clearly show that he at the time fully appreciated the danger to which he was exposed, or that he had such thoughtfulness or discretion to avoid it which is possessed by an ordinarily prudent adult person as to require his conduct to be measured by such a standard. The respondent's contention in this regard is well answered by the court in the case of *Thompson* v. *M., K. & T. Ry. Co.,* 93 Mo. App. 548, 67 S. W. 693, in the following language:

"Suppose the fact to be conceded that the plaintiff had sufficient mental capacity to know that it was dangerous to undertake to pass between the cars of defendant's train while it was standing on its track at said station, and that notwithstanding this knowledge of the danger he attempted to pass between such cars and was thereby hurt, is that of itself sufficient to charge him with contributory negligence? A boy may have the knowledge of an adult person in respect to the danger which will attend a particular act, but at the same time he may not have the prudence, thoughtfulness, and discretion to avoid them which is possessed by the ordinarily prudent adult person, and therefore it has become a settled rule of law in this state that a child is not negligent if he exercises that degree of care which, under like circumstances, would be expected of one of his years and capacity. And whether he uses such care in any given case is a question to be left for the jury to decide. (*Anderson v. Railroad*, 81 Mo. App. 116; *Riley v. Railroad*, 68 Mo. App. 652; *Burger v. Railroad*, 112 Mo. 249, 20 S. W. 439, 34 Am. St. Rep. 379; *Anderson v. Railroad*, 161 Mo. 411, 61 S. W. 874.) The defendant's instructions, as have been seen, told the jury that if it found the fact to be that the plaintiff had sufficient mental capacity to know the danger attending an attempt to pass between the cars, and with this knowledge made such an attempt and was thereby injured, he was guilty of contributory negligence, without reference as to whether or not he had the prudence, thoughtfulness, and discretion to avoid it (the danger) which is possessed by an ordinarily prudent adult person."

While a child eight years of age may, in some cases, be guilty of negligence as matter of law, the question is generally

one of fact for the jury. (1 Thompson's Commentaries on the Law of Negligence, sec. 308; 3 Elliott on Railroads, sec. 1261.) We are of the opinion that, under the facts and circumstances of this case, the question here was one of fact.

The judgment of the court below is therefore reversed, and the cause remanded for a new trial. Costs to appellant.

McCARTY, C. J., and FRICK, J., concur.