### NORTHERN PAC. RY. CO. v. CHERVENAK.

(Circuit Court of Appeals, Ninth Circuit. February 10, 1913.)

No. 2,137.

1. RAILROADS (§ 350*)—ACCIDENT AT CROSSING—ACTION—QUESTIONS FOR JURY.

Defendant railroad company had a switch track covered by a snowshed leading downgrade to a coal tipple. The track was crossed by a planked road leading from the end of a cross street through a gate in the shed which was used by coal teams and by the public generally in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

crossing from the town to a suburb. Cars in strings of 6 or 7 were run down the switch to the coal tipple by gravity, in charge of a brakeman who stopped each on a scale near the crossing and weighed it. Plaintiff, who was five years old, with other children wished to cross the track, but the crossing was blocked by cars which were standing still. After waiting from 15 minutes to half an hour, and seeing no engine attached to the cars and no one in charge, the children started to cross between the cars, which were started up by an employé of defendant without warning, and plaintiff was caught and his foot crushed. *Held*, that it was a question of fact for the jury whether, under all the circumstances, defendant was charged with a duty toward plaintiff which it neglected to perform by the exercise of reasonable care not to move its cars without warning to persons who might desire to cross the track.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

2. RAILROADS (§ 325*)—CONTRIBUTORY NEGLIGENCE—CHILDREN—AGE AT WHICH CHARGEABLE WITH NEGLIGENCE.

A child five years old, injured while attempting to cross a railroad track over a commonly used crossing on which unattached cars were standing, cannot be charged with contributory negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1029–1036; Dec. Dig. § 325.*]

3. DAMAGES (§ 167*)—PERSONAL INJURY—EVIDENCE—LIFE EXPECTANCY.

In an action for a personal injury which caused the loss of plaintiff's foot, life tables showing his expectancy of life at the time of the trial were admissible on the question of damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 487–489; Dec. Dig. § 167.*]

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Frank H. Rudkin, Judge.

Action at law by John Chervenak, a minor, by his guardian ad litem, John Piper, against the Northern Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The plaintiff brought an action in the United States District Court for the Western District of Washington, Southern Division, in December, 1910, against the defendant to recover damages for personal injuries alleged to have been received by the plaintiff, and charged to have been caused by the defendant at the town of Roslyn, in the state of Washington, on the 7th day of September, 1897. Roslyn is and was at the time of the injury a station on the defendant's railroad. The plaintiff was born on May 31, 1892, and at the time of the injury was a child aged five years, three months, and six days. The defendant, the Northern Pacific Railway Company, owned and operated a railroad running through the town of Roslyn, and in conducting its business in that place owned and operated several lines of side track or switches. The Northwestern Improvement Company was a corporation owning and operating coal mines in the vicinity of Roslyn, and also owning certain tracts of land on a portion of which were the tracks of the Northern Pacific Railway. The Northwestern Improvement Company was originally made a defendant in the case; but at the close of the testimony on behalf of the plaintiff, no evidence appearing tending to show negligence on the part of that company with respect to the injury to the plaintiff, the action was dismissed by the plaintiff as against that company. Roslyn at the time of the accident was a mining town of about 3,000 inhabitants. Pennsylvania avenue was the principal street of the town, and, extending through its principal business part, terminated at the right of way or tracks of the railroad company. One of the tracks was inclosed by a snowshed about 300 feet long and extended

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

over that part of the track which would have been crossed by Pennsylvania avenue had it been extended. A wagon road extended from the termination of Pennsylvania avenue across the railway tracks and through an opening in this snowshed, which was about 10 or 12 feet wide. This roadway, planked for teams to cross over, had been used for a number of years by the Northwestern Improvement Company to transport material and supplies from Roslyn to its mines, and in passing to its machine shops, carpenter shops, blacksmith shops, etc., which were located on the opposite side of the railway tracks from the town of Roslyn. It was also used by the miners going to and from their work, by children going to school, and by others residing on the opposite side of the tracks from the town in a place known as Brookside addition. There was another crossing about 225 yards above, but this was the crossing generally used by people crossing from one side of the track to the other. The railway track which passed under the snowshed was used for delivering empty cars down to the tipple at a mine below to be loaded. This track was on a grade so that the cars would run down toward the tipple of their own momentum. The track runs north and south, the tipple being at the south end, and the manner of operating the cars was to place the empty cars at the north end of the track, where they could be taken charge of by a man in the employ of the railway company, who would usually take a string of seven or eight cars coupled together, loosen the brakes, and let the cars run down the track under the shed until the first car would be upon the scales, located about 75 feet north of the roadway passing through the snowshed. He would then stop the cars by setting the brake on one of them, get off the car and weigh the one on the scales, and then go back on the car, loosen the brake, and let the cars run until the next car was on the scales, when he would again set the brake, stop the cars, get off and weigh the car, and then go back on the car and repeat this process until all the cars which he had in the string were weighed, when he would again go back on the car, loosen the brake, and let the cars run down to the tipple.

On the day of the accident, the plaintiff, together with four other boys, whose ages ranged from 7 to 10 years, had gotten together at a point on the west side of the tracks next to the town and south of Pennsylvania avenue, where they had been attracted by a car that was off the track. From there they started to go to their homes in the Brookside addition to Roslyn, which lay east of the tracks and to the north of the roadway through the snowshed. The boys followed the roadway passing through the snowshed; but, arriving there, they found the roadway blocked with cars which had been or were being weighed and passed over the scales in the manner above described. No engine was attached to these cars and no one seen by the boys to be in charge of the cars. After waiting outside of the snowshed for some time, estimated by the boys from 15 to 30 minutes, during which time the cars were not moved, and as there was no indication that they were about to be moved, and no one seen by the boys to be in charge of them, they decided to cross the track by going under the cars. The older boys started, and the plaintiff followed; he passing under the coupling between two cars and was the last to attempt to go through. About this time an employé of the defendant, for the purpose of letting the cars down to the tipple, proceeded without notice or warning of any kind to release the brakes holding the cars and permitting them to run down the track by force of gravity. Before the plaintiff could get through, the cars were in motion, and as he was passing over the last rail a wheel of one of the cars caught his foot and crushed it so that amputation of his foot was necessary, and the operation was performed by a surgeon soon after the injury. The cars were being handled at the time by one Robert Jackson, an employé of the defendant, who died before this action was commenced.

In the course of the trial the plaintiff called as a witness H. P. Howell, a life insurance agent, who was permitted to testify over the objection of the defendant that the life expectancy of a man 19 years of age was 42.87, and a man of 20 years of age 42.20.

Upon the conclusion of the testimony on the part of the plaintiff, the defendant moved the court to direct the jury to return a verdict for the defend-

ant. The motion was denied, and the defendant allowed an exception. The jury returned a verdict in favor of the plaintiff in the sum of $2,850. The defendant brings the case here upon writ of error.

Geo. T. Reid, J. W. Quick, and L. B. da Ponte, all of Tacoma, Wash., for plaintiff in error.

Robert M. Davis and Frank C. Neal, both of Tacoma, Wash., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). Defendant refers to the fact that this action was not brought until 14 years after the injury and would have been barred by the statute of limitations had not the plaintiff been a minor. This circumstance, defendant suggests, is of such an unusual and suspicious character as to impose upon the court the duty of investigating the circumstances with unusual care and not impose the penalty upon the defendant unless the plaintiff's evidence shows a clear right to recovery. The explanation of the delay in bringing the suit is not in the record. A probable and plausible explanation is stated in the brief of the plaintiff, but we do not propose to enter into a discussion of the fact or its explanation. It is sufficient that the statute of limitations of the state of Washington does not apply to persons under the age of 21 years. Remington & Ballinger's Ann. Codes & Statutes of Washington, § 169. The delay does not appear to have had any substantial bearing upon the merits, nor has it been in any way prejudicial to the rights of the defendant. Further than this it is the duty of this court to examine every case before it with care and without regard to matters not properly before it.

[1] The action of the court in denying defendant's motion to instruct the jury to return a verdict for the defendant is assigned as error.

The motion was necessarily based upon the objection that there was no question of fact to be submitted to the jury. The objection involves the question whether, under all the circumstances, the defendant was charged with a duty to the plaintiff which the evidence tended to show it neglected to perform. The plaintiff was a child a little more than five years of age. Defendant's train of cars blocked a crossing where people including children were in the habit of passing from one side of the track to the other. To this train of cars no engine was attached, and plaintiff testifies that he saw no one in charge of it. The presence of a live engine attached to the train would have been of itself a warning to a child of five years of age that there was danger in crossing under the cars, and the absence of this warning was to that extent an absence of notice that there was danger. Furthermore, the cars had not been moved for some time, and the boys did not see any one in charge of them, and were not warned by any one that the cars were about to be moved. Had the cars been moved while the boys were waiting, or had the boys seen that they were in charge of some one, the situation might have been a sufficient warning that there was danger that the cars would be likely to be moved at any moment; but in the absence of these usual and ordinary warning signs, and in the absence

of any actual warning from the person in charge of the cars that he was about to move them, it was plainly a fact for the jury to determine whether under all the circumstances the defendant was charged with a duty to the plaintiff which it had neglected to perform.

But was the fact that the crossing was blocked with cars a sufficient warning to all persons whether young or old that the crossing was not to be used? This might be so in some cases, but was it so in this case?

Lewis J. Moore, who was city marshal at the time of the accident, and at the time of the trial one of the justices of the peace of the town of Roslyn, testified as to the situation at the time of the accident. He said:

"I have occasionally seen the crossing blocked with a string of cars under the snowshed maybe for an hour at a time, and in crossing there would climb over between the cars, and if there was no danger, or they were not moving, they would probably crawl under it between the cars. A person·in the west side of the tracks at Pennsylvania avenue would have to cross that way in order to go up to Brookside marked 'A' on the plat, or else go around and cross above at Idaho avenue. There is no other way unless they would go on the company's right of way, either up the track or down the track by the tipple. If a person was on the west side and wanted to get to the point marked 'A' (a point in Brookside addition), he would most likely walk through that crossing. They would have to cross the track even if they went back and up by the way of Idaho avenue."

This testimony tended to establish the fact that when this crossing was blocked by cars people would cross from one side of the track to the other, either over or under the couplings between the cars. If the jury believed this testimony, then a situation was presented requiring the defendant in moving its cars over this crossing to exercise reasonable care so as not to injure persons who might be passing from one side of the track to the other, and a reasonably prudent person charged with the duty of moving cars over the crossing as in the manner described in the evidence would have exercised this reasonable care by keeping a lookout for persons approaching or near the crossing and warning such persons of the movement of the cars.

The law applicable to the situation is well stated by the Court of Civil Appeals of Texas in Ft. Worth & D. C. Ry. Co. v. Longino, 54 Tex. Civ. App. 87, 93, 118 S. W. 198, 201, as follows:

"We take it to be well settled that railroad companies are charged with the duty of exercising ordinary care to discover the presence of persons on their tracks, and to avoid injuring them at those places where, under all the circumstances, they are reasonably chargeable with knowledge that such persons are liable to be; and in our judgment it can make no difference, so far as the duty of the railroad company is concerned, whether such persons are technically to be classed as trespassers, licensees, or persons using the company's tracks as of right. In all such cases the duty is imposed because of the broad rule of humanity that one engaged in so dangerous a business is required to exercise ordinary care to avoid injuring another when the presence of and danger to such other person is reasonably anticipated."

In Philadelphia, B. & W. R. Co. v. Layer, 112 Pa. 414, 3 Atl. 874, the plaintiff was a child six or seven years of age, walking on a street in a densely populated portion of the city of Philadelphia. He came to the railroad crossing, where he found a train of freight cars of the defendant on the crossing barring his progress. He entered an opening between a lumber car and a box car. These two cars were coupled

together by a pole, and as he got hold of the coupling pole, which was directly over the street crossing, the box car struck him and threw him upon the track, and as he attempted to escape the impending danger his left hand and three fingers of his right hand were caught and completely severed by the wheel. Upon the trial of the cause the defendant asked the court to instruct the jury:

"If it found that the child crossed between the cars taking hold of the coupling just as the train started, there was no duty of the defendant to it. and the verdict should be for the defendant."

This instruction was refused by the court.
The defendant also asked the court to instruct the jury that:

"When a train covers in part a crossing, while on a journey, no one has a right to pass under it at any point. It is the duty of all to stop or go around, and the defendant had a right to presume plaintiff's duty would be performed, and the verdict should be for the defendant."

This instruction was modified to read that:

"When a train covers a crossing and is actually in motion, it is illegal for any one to cross between the cars, and while it is not in motion it is illegal for any one capable of contributory negligence to cross, except in case of a child of tender years, who is not capable of contributory negligence."

The court then read what appears to be an additional part of the instruction requested by the defendant:

"And if you find the plaintiff crossed or attempted to cross while the cars were in motion, the verdict in such case should be for the defendant."

With respect to this clause of the instruction the court said:

"That would be a presumption and point of law certainly well taken with respect to an adult as one capable of contributory negligence. In this case it is qualified by a want of capability of contributory negligence if the cars were not in motion when the plaintiff attempted to cross."

The case was submitted to the jury, and there was a verdict and judgment for the plaintiff.
The case was taken to the Supreme Court of Pennsylvania, where the judgment was affirmed. In discussing the case the court said:

"Negligence has very often been defined to be the absence of care under the circumstances. There was evidence in the cause tending to show that the train was not only standing upon the street, but that it had been standing there as an obstruction to the crossing for ten minutes; that several adult persons in the meantime had crossed the avenue over or under this coupling; that a score or more of children were at the time playing in the street on the north side of the train; that one of these boys had actually ridden upon this pole across Second street; that this was a crossing of an important and much traveled street in a densely populated portion of a great city, and in the immediate vicinity of a number of primary and secondary schools. It also appears that there were no gates or guards erected across Second street; no flagman stationed there; no brakemen at the crossing; and there is evidence that no whistle or other warning was given when the train was about to start. We do not say that the defendant was required to erect gates, or that flagmen should have been stationed at this point; but we do say that, under the circumstances of this case, in the absence of these useful precautions, it was not unreasonable to expect that some proper warning would be given of the starting of the train. Certainly the defendant could not, in view of this evidence, call upon the court to instruct the jury as a matter of law that the company owed no duty to the public or to this child. It may

be that the warning, if given, would not have been heeded by the child; but this does not dispense with the duty. The defendant cannot be relieved from liability on mere conjecture. If, after the exercise of due care by the company, the child had been injured, no responsibility would result. \* \* \* Whether or not, therefore, the defendant was guilty of negligence, in our opinion was a question of fact to be determined upon a consideration of all the evidence. There was evidence, we think, from which that fact might be fairly inferred, and the determination of that question was properly submitted to the jury."

[2] With respect to the question of contributory negligence on the part of the plaintiff in that case the court said:

"The plaintiff was at the time of the injury a child of tender years, without any experience and discretion which would enable him to understand the dangerous character of the act which resulted in his injury. A child's capacity is the measure of his responsibility. If he has not the ability to foresee and avoid danger, negligence will not be imputed to him. \* \* \*"

With respect to this defense the defendant, in its answer in the present case, alleges, among other things:

"That said injury was caused by the carelessness and negligence of the said John Chervenak, and not by reason of any carelessness or negligence on the part of this defendant."

Defendant also cites as authority in support of this defense the case of Studor v. Southern Pacific Co., 121 Cal. 400, 53 Pac. 942, 66 Am. St. Rep. 39, where a child between 12 and 13 years of age attempted to cross between two cars of a train standing on a street crossing, and while in the act of climbing over the coupling the train started backward, without giving any notice by bell or whistle, and he was injured by being crushed between the cars and subsequently died from the injuries received. The plaintiff was nonsuited upon the trial. The Supreme Court held that the evidence clearly showed that the proximate cause of the injury was due to the boy's negligence, and that a nonsuit was justified. But the court observed that:

"The same act which would be negligence in an adult may not be such if done by a child, but a child is required to exercise the same degree of care that would be expected from children of his age, or which children of his age ordinarily exercise."

With respect to the child injured in that case the court said:

"The capacity and intelligence of the child are not controverted, and he must be presumed to have had all the qualities ordinarily belonging to a person of his age."

It follows that, as the plaintiff in this case was but little more than five years of age at the time of the injury, contributory negligence was not an element in the case, and that the only question was whether, under all the circumstances, the defendant company was charged with the duty which it neglected to perform.

In Northern Pac. Ry. Co. v. Curtz, 196 Fed. 367, 116 C. C. A. 403, the action was brought by a guardian ad litem to recover damages for an injury to a minor. Upon the trial of the case there was evidence that children had for several years been in the habit of going into defendant's cars from which wheat had been unloaded, and while the cars were standing on a track of defendant's road in a public street; that this fact was known to defendant's employés, who made no objec-

tion; that while plaintiff, a boy of 11 years of age, was in such a car engaged in sweeping up loose wheat on the floor of the car, an engine to which was attached other cars was driven against this car and the plaintiff thrown from it and injured. Upon this state of facts the defendant asked the court to instruct the jury to find for the defendant. The motion was denied, and the case was brought to this court, and the action of the court in submitting the case to the jury was affirmed. The court in stating the law applicable to such a case said:

"The occupant or owner of premises who invites, either expressly or impliedly, others to come upon them, owes to them the duty of using reasonable and ordinary diligence to the end that they be not necessarily or unreasonably exposed to danger: and an implied invitation to another to enter upon or occupy premises arises from the conduct of the parties, and from the owner's knowledge, actual or imputed, that the general use of his premises has given rise to the belief on the part of the users thereof that he consents thereto. This doctrine has often been applied to cases where a railroad company permits the public to cross its track between given points, and it is universally held that, where for a considerable period persons have been accustomed so to cross a railroad track, the employés of the company in charge of its trains are required to take notice of that fact, and to use reasonable precautions to prevent injury to persons whose presence there should be anticipated."

It was accordingly held that whether the employés of the railroad company have taken reasonable precaution to prevent injury in such a case was a question for the jury.

The same rule was applied to children at railroad crossings under substantially the same circumstances as in the present case in the following cases: McMahon v. North Cent. Railway Co., 39 Md. 438; Hofler's Adm'r v. Southern Railway Co. (Ky.) 53 S. W. 665; Carmer v. C., St. P., M. & O. Ry. Co., 95 Wis. 513, 70 N. W. 560; Missouri, K. & T. Ry. Co. v. Kemendo (Tex. Civ. App.) 124 S. W. 968; Gesas v. Oregon S. L. Ry. Co., 33 Utah, 156, 93 Pac. 274, 13 L. R. A. (N. S.) 74.

In Hall v. Cleveland, C., C. & St. L. Ry. Co., 15 Ind. App. 496, 44 N. E. 489, cited by the defendant, the complainant brought suit to recover damages for the death of his boy, who was between 13 and 14 years of age. The boy had attempted to cross a railroad track where a train of cars had been standing across a public street. He undertook to pass between two cars, and while he was so doing the cars were suddenly started without warning, and the boy caught and killed. A complaint alleging these facts, among others, was demurred to, and the demurrer sustained on the ground that the averments were insufficient because there was no allegation in the complaint that the deceased was upon the track by invitation of the defendant, nor were the facts set forth sufficient to show an implied invitation as a necessary conclusion of law or fact.

In the case before us it was alleged in the complaint:

"That said crossing at such point had been in common use as a crossing for a period of 20 years or more and was provided by defendants with facilities for a crossing for the public, and was so used by the permission and request of defendants."

There was evidence tending to support this allegation. The witness Moore testified that the crossing was in common use by the public in

general; that the crossing had been there 10 years before the accident. Other witnesses testified that the crossing was used by children. This was evidence from which a jury might infer an invitation, and in the absence of the instruction given by the court, it will be presumed that the question was submitted to the jury with proper instructions.

In Wagner v. Chicago & N. W. Ry. Co., 122 Iowa, 360, 98 N. W. 141, also cited by the defendant, a child four years of age was run over and killed in defendant's switchyard in the city of Des Moines, Iowa. The child was struck by a car on a track described as the "scale track." There was no crossing over this track, at or near where the child was struck; but there were footpaths running parallel with it. The child was not using one of these paths at the time it was struck, but had wandered onto the "scale track," and the evidence tended to show that it was crawling along on its hands and knees under the cars when it was run over and killed by the movement of the cars. These cars had been struck by an engine attached to a work train which was being switched onto the "scale track" for the purpose of allowing a passenger train to pass on the main track. The conductor, superintendent, engineer, and fireman on the work train testified that they were on the lookout as the work train approached the cars on the "scale track," and saw no children there, and, as there was no crossing at this point, there was nothing in the situation as appears from the evidence that would have reasonably caused the defendant's employés to anticipate the presence of the child. But the case was not taken from the jury. The question whether the defendant owed any further duty to the child was submitted to the jury, and the Supreme Court held that, while the instructions given by the trial court to the jury were in the main correct, certain other instructions should have been given. Referring to one such instruction, the court said:

"The question is not one of contributory negligence, but rather of duty on the part of the defendant. The place where plaintiff's intestate was injured was private property of the defendant. The boy had no right to be there except upon invitation, and the defendant was not required to keep a lookout for persons at any other places than where they were invited to come. Having provided a place for people to walk, it had a right to assume that those who availed themselves of its invitation would confine themselves to the places set apart for their use."

The court said further:

"Railway tracks are known places of danger. They are not made for the use of foot passengers, and ordinarily a railway company has a right to assume that they will not be so used. It certainly may assume that no children are playing about or under its cars, and, unless it knows or has reasonable ground to anticipate their presence, it is not bound to look out for them."

Upon the facts of this case as they are stated in the opinion of the Supreme Court, it might well have been contended by the defendant that the case should have been taken from the jury and a verdict directed for the defendant. The submission of the case to the jury with instructions as to the duty of the defendant makes the case an authority for the plaintiff in the present case.

We are of opinion that the question of defendant's negligence was properly submitted to the jury.

[3] The testimony of the life insurance agent as to the life expectancy of a man of 19 and 20 years of age as stated in the American Expectancy Table was properly admitted. Plaintiff's disability is permanent and will continue during his life. The probable length of his life was a fact for the jury to consider in determining the damage he had sustained.

The objection is that the plaintiff at the time he was injured was only five years of age, and that therefore it was improper to prove his life expectancy at the age of 19 or 20. The objection is based upon what was said by the Supreme Court of Wisconsin in Decker v. McSorley, 111 Wis. 91, 86 N. W. 554, that "the admission of a mortality table in evidence showing the expectancy of life of a child 10 years of age was error in an action for the death of a child 4½ years of age"; but this was upon the admission of the witness "that the expectancy of life of a child of 4 years was less than that of a child of 10 years, but could not state what it was nor did the table give it." There was no such admission in this case.

But a further objection to the table was that it did not tend to prove the real fact in issue. The action was to recover damages for the loss suffered by the plaintiff as the administrator of the estate of the deceased child arising from an injury causing the death of the child, and the question was as to the evidence that would justify the jury in finding the pecuniary benefit to the parents from the continuance of the life of the child during a term of expectancy divided into two periods, involving different elements: (1) During the period of the minority of the child; and (2) during the period of its majority. Referring to the evidence in the case, the court said:

"We cannot say that there was any evidence which would justify the jury in finding that there was any reasonable expectancy of pecuniary benefit to the parents from the continuance of the life of the child beyond its minority. * * * Nevertheless the court submitted to the jury the question as to the pecuniary loss suffered by the plaintiff, resulting from the loss of the boy's services and help after he attained his majority, and we are unable to say what part of the damages allowed by the jury was allowed for services after majority. Nor can we say with any certainty what should have been allowed by the jury for the boy's services while a minor."

This objection to the mortality table was not made, and could not have been made, in the present case.

In this case there is no admission, and nothing in the evidence from which we can infer, that the expectancy table did not tend to prove the precise fact in issue, namely, the plaintiff's life expectancy as one entire period of future disability, omitting all past disability for which he appears to have made no claim.

Finding no error in the record, the judgment of the District Court is affirmed.