BONNYLIN ADAMS *vs.* BOSTON ELEVATED RAILWAY COMPANY.
CLARENCE ADAMS *vs.* SAME.

Suffolk.    November 17, 1915. — January 6, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Negligence,* Of child. *Practice, Civil,* Exceptions, Rulings and instructions, Conduct of trial.

*It seems,* that it is negligence as matter of law for a child six years and ten months of age, after running behind a street railway car which has passed her on the nearer of two parallel tracks, to run into the side of another car on the farther track, which is starting from a stationary position and which has been plainly within her vision long enough for her to avoid running into it.

At the trial of an action against a corporation operating a street railway for personal injuries to a child six years and ten months of age, the plaintiff testified that, after waiting for a car to go by her on the nearer of two parallel tracks, and hearing no gong sound, she ran across the street in front of a car on the farther

---

track, which was standing still· when she first saw it, and was run into by that
car, a witness, called by the plaintiff, testified that the plaintiff ran across the
street behind the first car and then ran into the side of the car on the farther
track, and the defendant's witnesses testified that no car had been passing on the
nearer track but that the plaintiff ran across the open street directly into the
side of the car on the farther track. The defendant asked the judge to instruct
the jury that, if the plaintiff was injured by running into the side of the car,
she could not recover even if she had run behind another car and had· listened
and had heard no gong. The judge refused to give this instruction and in-
structed the jury in substance, that if the jury believed the plaintiff's story they
might find her to have been in the exercise of due care, but that if they believed
the defendant's witnesses they must find that she was not in the exercise of due
care. On exceptions by the defendant, after a verdict for the plaintiff, it was
*held*, that the refusal of the judge to give the instruction requested and his fail-
ure to instruct the jury that there was a third way in which they might find
that the accident happened as suggested in the instruction asked for were
wrong and gave the defendant a right to a new trial.

In an action for personal injuries to a child, the jury during their deliberations, at a
time when a hearing on a motion in another case was in progress in the court
room, sent in writing to the judge the question, "If the jury should make an
award to the plaintiff, is it in the power of the court to order the money to be
placed in trust until the plaintiff becomes of age?" The judge sent for the
jury and, in the absence of the counsel on both sides, instructed them in
substance, that, although the question had nothing to do with the issues be-
fore them, he saw no harm in telling them that in such a case a guardian would
be appointed. One of the counsel engaged in the hearing then going on,
who was not a counsel of record in the case before the jury, then said to the
judge in the hearing of the jury, that in case there should be a verdict for the
plaintiff the counsel for the plaintiff, who was associated with him, "would im-
mediately have a guardian appointed, to whom the money could be paid."
On exceptions of the defendant, which were sustained on another ground, it
was *said*, that it was not necessary to pass upon the supplemental charge of
the judge given in the absence of the counsel on both sides or upon his re-
ceiving without rebuke the suggestion of the counsel outside the case, which
suggestion was referred to as being "highly improper."

TWO ACTIONS OF TORT, the first by a minor, by her next friend,
for personal injuries sustained on October 31, 1913, when the
plaintiff was six years and ten months of age, from being struck
by a street railway car operated by the defendant on Dudley
Street in the part of Boston called Roxbury; and the second by
the father of the plaintiff in the first case for the amount of doc-
tors' bills and other expenses incurred by reason of her injuries.
Writs dated February 17, 1914.

In the Superior Court the cases were tried together before
*Lawton*, J. At the close of the evidence, which is described in the
opinion, the defendant, among other requests, asked the judge

to make the ruling which is quoted in the opinion. The judge refused to make this ruling and instructed the jury in the manner described in the opinion.

The jury retired for their deliberations in the afternoon between three and half past three o'clock. The counsel left the court room, and the judge began the trial of another case, which was suspended for the day at the usual hour of four o'clock. At twenty minutes past four o'clock the judge began a hearing on a motion for a new trial, in which W. I. Badger, Esquire, was counsel. While the hearing was going on, at about twenty minutes before five o'clock the officer in charge of the jury brought to the judge the following written question, signed by the foreman of the jury: "If the jury should make an award to the plaintiff, is it in the power of the court to order the money to be placed in trust until the plaintiff becomes of age?"

The judge made no effort to have the counsel or the stenographer summoned. The jury were called into the court room, and the judge there read to them the question and then said in substance as follows:

"One answer to your question is that it is no concern of yours what the answer is, as it has no bearing on the liability of the defendant, or on the amount of the damages if you find for the plaintiff. But I see no reason why I should not say to you that when a minor becomes entitled to a sum of money, either as the result of a suit or by a bequest, the money cannot be paid to the minor, but can only be paid to a legally appointed guardian. The parents of a child are its guardians in the sense that they have the custody and control of the child, but they do not as such have control of its property. The child's property must be in the control of the child's guardian. If there is none, one must be appointed by the court. Such a guardian must hold the property till the child is of age and then pay it over to him or her.

"Where settlement of suits by a minor are made without trial, such settlements have to be approved by the court, and in hearing such matters it is customary for the court to inquire what means are to be taken to insure the safe keeping of the money till the child comes of age. In cases where the amount is small it is a common practice to put the money in a savings bank in trust for the child."

As the jury started to withdraw to their room, Mr. Badger, who was not counsel of record in the case, rose and said in the hearing of the jury in substance, "I'd like to say, your honor, that in case of a verdict for the plaintiff in this case Mr. Pratt, who is associated with me, would immediately have a guardian appointed, to whom the money could be paid."

The jury thereupon retired, and later returned a verdict for the plaintiff in the first case in the sum of $8,500 and a verdict for the plaintiff in the second case in the sum of $250. The defendant alleged exceptions.

The cases were submitted on briefs.

*F. M. Ives*, for the defendant.

*C. M. Pratt, H. N. Berry & C. C. Bucknam*, for the plaintiffs.

RUGG, C. J. The first of these actions is by a child, who will be called the plaintiff hereafter, to recover for personal injuries received by her, while travelling on foot on Dudley Street in Roxbury, by coming into contact with a car of the defendant; and the second is by her father to recover his expenses incurred incident to these injuries. The plaintiff, who at the time of the accident was about six and one half years old, testified in substance, that being on the sidewalk and having seen a yellow car on the farther track come to a stop and people waiting to get on it, and having let a green car on the nearer track go by her, "she ran across the street behind the green car listening for the gong of the yellow car. She was pretty close to the back of the green car and heard no gong, or she would not have run across; . . . the front of the yellow car hit her. The last time she saw the yellow car before she came in collision with it, it was at a standstill, and while she was crossing the street she could not see the yellow car because the green car obstructed her view. The green car she ran behind did not stop at all but continued on its way." A rule of the defendant required the motorman of the yellow car to sound his gong under the circumstances disclosed. A witness named Bowman, called by the plaintiff, testified that "he saw the plaintiff run behind an outbound car and bump into an inbound car near the front. It seemed to him that she ran into the side of the car near the front. He thought she would bump into something when he saw her crossing the street." The evidence presented by the defendant tended to show that the plaintiff did not run behind another car at all,

but, without the intervention of any car passing on the nearer track, ran directly into the side of the car, by which she was injured. In this state of the evidence, the defendant asked for this instruction: — "If the jury believe that the plaintiff, Bonnylin Adams, was injured by running into the side of the car, the plaintiff in neither case can recover even though she ran behind another car and listened and heard no gong." This request was denied and no particular instructions were given touching the aspect of the case of her running from behind another car into the side of the car by which she was injured.

There was a material difference in the testimony of the plaintiff and that of the witness Bowman called by her as to the way in which the accident happened. According to the plaintiff's account, she went behind the green car and was hit by the front of the yellow car. This fairly was susceptible of the construction that she reached some point in front of the yellow car before it had advanced far enough to hit her. According to Bowman's narrative, she was not hit by the front of the car at all, but herself ran into the side of the car. This fairly is susceptible of the meaning that she ran into the body of the car. If she did that, having crossed the nearer track behind a car which did not stop at all but kept moving all the time, she could not have been exercising the care which even a child of her years should exercise. It is not due care even for a child of six years to run into the side of a car just starting from a stationary position, as was that which injured the plaintiff, and which, if she ran into its side, must have been plainly within her vision long enough for her to avoid running into it when there was no diverting travel on the street other than the car in the rear of which she had passed. The case at bar plainly is distinguishable from *Emery* v. *Boston Elevated Railway*, 218 Mass. 255, *Purcell* v. *Boston Elevated Railway*, 211 Mass. 79, and like cases.

No instructions covering this point were given. There was evidence to which the request was applicable. It was not evidence fragmentary or indecisive. It might be the turning point of the case. The charge intimated to the jury that there were only two theories of the way in which the injury occurred; the one in substance according to the plaintiff's testimony, and if this was true she might be found to be in the exercise of due care; and the

other according to the testimony of witnesses called by the defendant, and if this was true she was not in the exercise of due care. There was in reality a third way in which the jury might have found that it happened, as has been pointed out, and to which the attention of the judge was directed by the defendant's request. The refusal to grant it or to cover the subject matter in the charge was error.

It is not necessary to consider whether the defendant's exception to the supplemental charge given by the judge in the absence of both counsel, in response to the question presented by the jury after some deliberation, and to the highly improper suggestion of another attorney then in court touching the question of the jury and addressed to the court without rebuke in the presence of the jury, was seasonably taken and ought to be sustained, as it is not likely to be repeated on a new trial.

*Exceptions sustained.*