[No. 16184. *En Banc.* July 25, 1921.]

THEODORE OLSON, *Respondent,* v. JOHN BARTON PAYNE
*et al., Appellants.*[1]

RAILROADS (80)—PERSONS ON OR NEAR TRACKS—CONTRIBUTORY
NEGLIGENCE OF PERSON INJURED. A boy twelve years of age and of
average intelligence and experience was guilty of contributory negli-
gence as a matter of law, where it appears that he had lived near
railroad tracks and was conversant with the dangers through fre-
quent warning by his parents, and was struck by the side of the
engine or the first car of a train, while he was walking alongside of
the track, the noise of the engine in laboring to draw a long train
around a curve and to pick up speed being sufficient to apprise him
of its approach.

SAME (82)—INJURY TO PERSONS ON OR NEAR TRACKS—PROXIMATE
CAUSE. The last clear chance doctrine is inapplicable in the case of
a naked licensee on or near railroad tracks, where his presence was
not known by persons on the engine causing his injuries, and his
own negligence had not ceased but was continuing.

Appeal from a judgment of the superior court for
Snohomish county, Alston, J., entered March 20, 1920,
upon the verdict of a jury rendered in favor of the
plaintiff, in an action for personal injuries. Reversed.

*Thomas Balmer,* for appellants.

*Black & Black,* for respondent.

BRIDGES, J.—This was a suit on account of personal
injuries. There was a verdict and judgment for the
plaintiff, and the defendant has appealed therefrom.

The jury having returned its verdict for the plain-
tiff, it will be our duty, in discussing most of the ques-
tions involved in this appeal, to look upon his testimony
in the light most favorable to him. In so doing, we
find testimony to support the following facts: In ap-
proaching the city of Everett from the north, the
Northern Pacific and the Chicago, Milwaukee & St.

[1]Reported in 199 Pac. 757.

Paul Railroads' rights of way are in reasonably close proximity, and where they go through that portion of the city hereinafter mentioned the rights of way are contiguous. Coming into the city from the north, one first comes to the Northern Pacific depot, at the foot of Pacific avenue. It is some 200 feet south of the depot that the rights of way of the two railroads become contiguous. Some 600 feet south of the depot is what is known as the "Fuel crossing" of the tracks for the Eclipse mill. About 200 feet farther south from this crossing is a switch stand, which was the point of the accident. In this neighborhood, the distance between the main line tracks of the two railroads is some ten or twelve feet, and on each side of the main tracks are certain side tracks. Both of these main tracks approach from the north on a wide curve, which terminates at about the mill crossing. Standing at that point and looking north along the Northern Pacific tracks, a train would come into view at about the depot, which is some 600 feet away. For many years pedestrians have been in the habit of traveling the right of way from the depot to the south, past the point mentioned and on toward the town of Lowell. The amount of such travel on the right of way was such that those operating the trains must have been aware of the custom. The Great Northern Railway also operates certain trains over these tracks. At the time of the injury, all the railroads were being operated by the appellant, as director-general of railroads.

About eight o'clock in the forenoon, on August 31, 1919, Theodore Olson, a boy practically twelve years of age, was going fishing. He first came upon the railroad track at the Eclipse mill crossing. There he stopped and looked both north and south along the railroad tracks, and did not see any trains in either direction. At that particular time, however, a Great

Northern freight train, operating on the Northern Pacific tracks, was approaching the Northern Pacific depot, but was then probably out of view of the boy, because of the curve in the railroad tracks. Not seeing any trains the boy turned southward, walking beside the Northern Pacific main line track, and close to the end of the ties. When he got to the switch stand, which is some 190 to 200 feet south of the mill crossing, where he had looked for the trains, the forepart of the engine of the approaching Great Northern freight train passed him, and he was hit by some part of the rear portion of the engine, or one of the cars immediately behind it. The blow caused him to be knocked under the train, and one of his legs was so nearly cut off that it was amputated as soon as he was taken to the hospital. There is nothing in the testimony to show that there was anything unusual projecting from the side of the engine or any of the cars, and if the boy was hit as he says he was, it must have been by the steps of the engine or some permanent portion of one of the cars immediately following it. The boy testified that the train in approaching him did not blow its whistle nor ring its bell, and that he did not hear its approach or know of it until the forepart of the engine passed him. As it came to the Northern Pacific depot, which is some 600 or 800 feet from the place of the injury, the train slowed down to about three or four miles an hour to receive certain orders, and then proceeded forward, gaining as much speed as it could by laboring hard. At the time it struck the boy, it was traveling about ten miles an hour. This engine was pulling between 55 and 60 freight cars and was making a great deal of noise. The boy had a long spell of dangerous sickness, hovering for weeks between life and death. The defendant's motion for nonsuit and

for directed verdict and for judgment notwithstanding the verdict and for new trial were all denied.

The appellant contends that it was impossible for the injury to have happened in the way the boy testified it did, and it must be admitted that one studying the record is made to wonder whether the boy was mistaken. But, on the other hand, it is not impossible for the accident to have happened just as the boy testified. From the testimony, the jury had a right to believe that it happened in that way and by its verdict has bound us in that regard. We must, therefore, assume that the accident happened in the way the boy said it happened. But, so assuming, is he entitled to recover?

The chief question argued by both sides is as to whether the boy was guilty of such contributory negligence that, as a matter of law, and notwithstanding the verdict, we may say that he cannot recover. He is of average intelligence and experience. He has succeeded in making from year to year his various school grades. He was thoroughly acquainted with the immediate neighborhood where he was injured; he had been there and on those tracks a number of times, both alone and with his parents. He had some two or three years before lived within a block or two of a railroad. His parents had time and again warned him about the danger of being on the tracks. His age, his intelligence and his experience must have made him know as fully as any one could know, that he was in a place of danger; that he must keep away from the trains; that he would be killed or hurt if he got too close to them. That he knew and fully appreciated these things is shown by the fact that when he first came to the tracks he looked in both directions to see if any trains were coming.

Many, and probably a majority, of the courts of this country have held that a child five or six years of age or under, cannot, but that a boy of ten or twelve years of

age may, under some circumstances, be guilty of such contributory negligence as will preclude recovery for his injury. The facts in any two personal injury cases are never the same. Each case must be decided upon its own peculiar facts. In determining whether this boy was guilty of such negligence as to preclude recovery, we must take into consideration his age, his intelligence, his experience and his knowledge of the surrounding circumstances. In so doing we must not hold the boy to that strict accountability to which we would hold one who had reached older years. But the matters for the respondent's consideration to assure his safety were of the most simple and elementary nature. There were no other noises or trains to confuse; the situation was not such as to require a sudden election what course to pursue. It is true he says the whistle was not blown and the bell was not rung, although nearly everybody else testified to the contrary, yet the purpose of giving those signals is to warn. In this case we have a freight train of some sixty cars approaching him, laboring heavily to make a curve and gain speed. It does not need testimony, although there is plenty in the record, to inform us that, under those circumstances, the train must have made a great noise. The boy says that he did not hear the noise of the oncoming train, but if he was exercising such reasonable care as a boy of his age, experience and intelligence must, as a matter of law, exercise under like circumstances, he must have heard it. There was nothing here, so far as the testimony shows, to distract his attention. It seems impossible to look upon this case otherwise than that the respondent wholly failed to give any heed to his surroundings. We must, of course, hold that he must have exercised at least a small amount of care, and yet it seems to us that he did not use any.

That the court is justified, notwithstanding the ver dict of the jury, under proper circumstances, in holding, as a matter of law, that a child twelve years of age has been guilty of such contributory negligence as precludes his recovery, is shown by the following citations, selected from many of like character: *McGee v. Wabash R. Co.*, 214 Mo. 530, 114 S. W. 33; *Studer v. Southern Pacific Co.*, 121 Cal. 400, 53 Pac. 942; *Texas & Pac. R. Co. v. Phillips*, 91 Tex. 278, 42 S. W. 852; *Schoonover v. Baltimore & Ohio R. Co.*, 69 W. Va. 560, 73 S. E. 266; *Kyle v. Boston Elevated R. Co.*, 215 Mass. 260, 102 N. E. 310; *Adams v. Boston Elevated R. Co.*, 222 Mass. 350, 110 N. E. 965; *Derringer v. Tatley*, 34 N. D. 43, 157 N. W. 811. In this connection we call attention to the notes commencing on page 10, L. R. A. 1917F; notes commencing at page 123 of the same volume, and notes commencing at page 172 of the same volume. The authorities are elaborately collected and digested in these notes. We have recognized the same doctrine in the case of *Oregon R. & Nav. Co. v. Egley*, 2 Wash. 409, 26 Pac. 973, 26 Am. St. 860, where we held that a boy nine and one-half years of age was, as a matter of law, guilty of such contributory negligence as to bar his recovery. See, also, *Clark v. Northern Pacific R. Co.*, 29 Wash. 139, 69 Pac. 636, 59 L. R. A. 508.

A very conscientious study of the facts of this case leads us to the necessary and inevitable conclusion that, under all the circumstances, the respondent was, as a matter of law, guilty of such contributory negligence as bars his recovery.

It is argued by the respondent, however, that even under these circumstances, the plaintiff is entitled to recover on the doctrine of last clear chance, but we cannot accept this view. We do not think that doctrine is involved in this case for at least two reasons: First, because all the testimony shows that those in charge of

the train did not see the boy; there were three or four persons on the engine, and all of them testified that they did not see him; in fact, they contend the boy was not there as the engine approached or reached the place of the accident. Second, because the respondent's negligence had not ceased but was continuing. At most, it was a case of injury resulting from the continuing negligence of both parties. Again, the respondent was but a naked licensee on appellants' tracks and he could recover only for wantonness or wilfulness on the part of the appellant. In this as well as in other regards this case is controlled by *Scharf v. Spokane Inland Empire R. Co.*, 92 Wash. 561, 159 Pac. 797, and cases there cited. There is, therefore, nothing upon which to base the doctrine of last clear chance.

The judgment is reversed with instructions to dismiss the case.

PARKER, C. J., MACKINTOSH, FULLERTON, MAIN, HOLCOMB, TOLMAN, and MITCHELL, JJ., concur.