## OREGON–WASHINGTON R. & NAV. CO. v. ROMAN.

(Circuit Court of Appeals, Ninth Circuit.   December 3, 1923.)

### No. 4049.

1. **Railroads ☞356(1)—Child crossing tracks by generally used path a licensee.**

   Where a railroad company has knowledge that the public, including children, habitually uses a path across its tracks, and without warning sign or objection permits such use, a child, who uses the path and crosses the tracks, is not ipso facto a trespasser, but a licensee, to whom the company owes the duty of exercising reasonable care, or such diligence as is reasonably commensurate to the dangers reasonably to be anticipated.

2. **Railroads ☞400(2, 11)—Negligence and contributory negligence held for jury on evidence as to injury to boy using path across tracks.**

   Where small boys, using a path through railroad yards commonly used by the public, on finding that path was blocked by a train, passed around the train, and there was evidence that they looked and listened, but one of them was killed when the train was backed without warning, whether he was negligent, and whether the accident would probably have been averted, if there had been a man on the last car, or if the whistles had been sounded, were questions for the jury.

3. **Appeal and error ☞1066—Railroad, sued for child's death, held not prejudiced by submission to jury of question of parents' negligence.**

   In action for death of a boy, struck by a train while using a path through railroad yards in going to a dump after wood, where there was testimony that his parents encouraged him and his brother to go there for wood, and that his mother had on other occasions gone with them and helped them between standing cars, the railroad *held* not prejudiced by submission to the jury of the question of the parents' negligence.

4. **Appeal and error ☞1050(1)—Evidence of use of path across railroad, several years before accident, held not prejudicial.**

   In action for the death of a boy, killed while using a path through railroad yards, admission of testimony of a witness, who left defendant's employ four or five years before the accident, that he knew the public used such path, was not prejudicial, where it merely carried the evidence of use farther back than the times fixed by other witnesses, especially where it did not appear that his knowledge was confined to the time of his employment by defendant.

5. **Trial ☞296(3)—Refusal to charge that one deviating from path across railroad tracks was a trespasser not error, in view of other instructions.**

   In action for the death of a boy, passing through railroad yards by path commonly used by the public, and, on finding it blocked by train, passing around the train, which backed and killed him, where the court charged the law applicable to trespass, and charged carefully as to deceased's duty to use ordinary care, the refusal to charge that any material deviation from the path constituted deceased a trespasser was not error.

6. **Appeal and error ☞174—Question of capacity to sue not raised, when no demurrer filed.**

   In consolidated actions by the administrator and parents of a minor, killed by a train, the question of plaintiff's legal capacity to sue was not raised, under Rem. Comp. Stat. Wash. § 259, where there was no demurrer, especially where no exceptions were taken to instructions explaining the statute as permitting the administrator to recover for death when parents were dependent, and as permitting parents to recover for suffering, prior to death.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

Actions by James Roman, administrator of Edgar Roman, deceased, and by James Roman and wife, against the Oregon-Washington Railroad & Navigation Company, consolidated for trial. Judgment for plaintiffs, and defendant brings error. Affirmed.

Writ of error to review judgments for damages for the death of a minor child through the alleged negligence of the railroad company, plaintiff in error. One action was brought by James Roman, as administrator of the estate of Edgar Roman, deceased, and the other was brought by the father and mother. They were consolidated for trial.

Two sons of James Roman, Edgar, aged 12, and Charles, aged 9, were on their way to get wood from a city dump on the opposite side of the railroad track from their home in Seattle. The dump was reached by a path which crossed the tracks within the switch yard at Second avenue and West Dawson street. Edgar, the older boy, was wheeling a wheelbarrow. When the boys reached the intersection of the path with the track, they found a train of many freight cars standing thereon; the last car blocking the path. The track curved so there was no vision of the south end of the train by one standing at the intersection of the path. Charles testified that they saw no engine, heard no signal, and that there was no one in sight. The boys went a short distance to the end of the train, and started across the track about a foot behind the last car. While Edgar was crossing, and Charles was about to lift the wheel of the wheelbarrow over the second rail, the cars backed, knocking Edgar down and fatally injuring him. The defendant denied liability, and set up contributory negligence.

The evidence of plaintiff below tended to prove that the path followed by the boys had been in constant use for a number of years, and that it was being used as a short cut to the city every day by people living on the south side of the tracks, by school children, and by those going to and from the city dumping ground, and that unless one walked 8 or 10 blocks in a roundabout way, the path was the only means of reaching the dump from the south side; that people in the vicinity secured wood from the dump, and that there were no signs warning trespassers. While the railroad company asserts that there was no invitation held out by the defendant to any one to use the path, there is ample evidence to justify the belief that the officials knew of the use of the path and did nothing to prevent its use.

Defendants offered testimony tending to prove that the parents of the deceased child encouraged the children to go to the dump for wood; that the mother had gone with them on other occasions to the dump, and, finding the path blocked by cars, had helped the children over the couplings or drawheads of the cars, and had herself crawled over them. To counterbalance this evidence, Charles Roman testified that he and Edgar were not between the cars when the accident happened.

W. H. Bogle, F. T. Merritt, Lawrence Bogle, Lane Summers, and E. I. Jones, all of Seattle, Wash., for plaintiff in error.

Fred C. Brown and J. Stanley Tyrrell, both of Seattle, Wash., for defendant in error.

Before ROSS, HUNT, and MORROW, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). The principal assignments of error go to the refusal of the court to sustain the motion for a directed verdict. But we are of opinion that the court was right in submitting the issues to the jury. While the books contain cases wherein, under the particular facts presented, the courts have held that children crossing railroad tracks may be guilty of

contributory negligence, nevertheless there are certain general principles now so well ingrafted upon the law of negligence that mere statement of them will demonstrate their applicability to the facts surrounding the injury to young Edgar Roman.

[1, 2] The case is as a matter of course to be considered upon the premise that the railroad had a right to move its cars, and, if there had been a fence across the path, a different situation would have been involved. But, where the company has knowledge that the public, including children, habitually uses a path to and across its tracks in a city, and without warning sign or objection permits the public to enjoy the privilege of using the path over its tracks in going from one point to another, there is an acquiescence, and a child who uses the path and crosses the tracks is not ipso facto a trespasser, but is to be regarded as a licensee, to whom the company owes the duty of exercising reasonable care in moving its cars and engines so as to protect him from injury. By its acquiescence the company is in a position where it cannot rely upon the doctrine that the child who uses the crossing does so at his own peril. Far more just is it to say that the rules of ordinary diligence control—diligence which is reasonably commensurate to the dangers reasonably to be anticipated. It was for the jury to consider whether, if there had been a man on the last car, or even if there had been the sounding of whistles, the accident would probably have been averted. Panama R. Co. v. Pigott, 254 U. S. 552, 41 Sup. Ct. 199, 65 L. Ed. 400; Baltimore & Potomac R. Co. v. Cumberland, 176 U. S. 232, 20 Sup. Ct. 380, 44 L. Ed. 447; Northern Pacific R. Co. v. Chervenak, 203 Fed. 884, 122 C. C. A. 178; Cahill v. Chicago, Milwaukee & St. Paul R. Co., 74 Fed. 285, 20 C. C. A. 184; Roth v. Union Depot Co., 13 Wash. 525, 43 Pac. 641, 44 Pac. 253, 31 L. R. A. 855; Taylor v. Canal Co., 113 Pa. 162, 8 Atl. 43, 57 Am. Rep. 446. Nothing in Olson v. Payne, 116 Wash. 381, 199 Pac. 757, conflicts with the views expressed. The facts there were very different, and the court well said: "Each case must be decided upon its own peculiar facts." Nor could the court say that the boy was negligent in going upon the track. Steele v. Northern Pacific Ry., 21 Wash. 287, 57 Pac. 820. The question was for the jury, particularly in view of direct testimony to the effect that the boys stopped, looked, and listened before they went across the track.

[3] Assuming that the negligence of the parents could be imputed to the child, a position that may well be doubted, in no possible way was it prejudicial to the plaintiff in error that the court submitted the question of the negligence of the parents to the jury. The parents could not be held guilty of negligence, unless they failed to exercise reasonable care, and the court charged to that effect.

[4] Error is assigned because, over the objection of the defendant, the court permitted a witness to answer the question: "Did you have any knowledge that the public was using this path?" Witness answered: "Yes, sir." On cross-examination witness testified that he left the employ of the company in June, 1917, or 1918, which was four or five years before the accident. Witness was for years an employé of the defendant company at Seattle, and testified without objection that the

path had been used by children and by people gathering wood, and that there was nothing to keep them away from the tracks. From all that appears, the knowledge of the use as testified to may not have been confined to the time that witness was in the employ of the railroad, and, even if it were, its effect merely carried the evidence of use farther back than the times fixed by other witnesses, and could not have been prejudicial.

[5] Plaintiff in error excepted to the refusal of the court to instruct the jury that if they found that a footpath across the track was acquired by user, and that one traveling across the same was not a trespasser, then "any material deviation from said footpath in crossing said track would constitute the party making such deviation in crossing said track a trespasser thereon." The request was founded upon the evidence that, when the boys reached the track and found the last car of the train directly in front of the intersection of the path by the track, they walked to the end of the car and started to cross. The requested instruction but presented a phase of the question, whether under all of the facts and circumstances the boy Edgar was a trespasser and assumed the risk of crossing where he did. However, the court gave the law applicable concerning trespass and carefully stated that the boy was bound to use ordinary care, and that if, because of doing some act that an ordinarily careful boy would not have done, or omitting to do what an ordinarily careful boy would have done under the circumstances he was injured, there could be no recovery. With such clear statements of the law the court was not in error in refusing the requested instruction.

[6] The final contention of the plaintiff in error is that neither the plaintiff, nor the plaintiffs, had legal capacity to sue. As the record fails to disclose that defendant below demurred to the amended complaints upon the ground that neither plaintiff nor plaintiffs had legal capacity to sue, or upon any other ground, the question now raised is really not for decision. Remington's Comp. Code Wash. § 259; Birmingham v. Cheetham, 19 Wash. 665, 54 Pac. 37; James v. James, 35 Wash. 655, 77 Pac. 1082; 20 R. C. L. 699. Furthermore, defendant below took no exceptions to the instructions of the court, explaining that there were two statutes of the state of Washington which were pertinent—one, which provides that the administrator of the estate of a deceased child may sue to recover damages where the parents of the child are living and dependent upon the child for support; and another, which provides that if a child dies by reason of injuries inflicted, and has suffered pain, the right of action does not end with the death of the child, but survives, and the parents who were dependent upon the child for support may sue and recover what the child could have recovered under such an action, such recovery being limited to damages for the pain and suffering that the child endured between the time of his injuries and his death. Under the decisions of the Supreme Court of Washington it would seem that the actions were properly brought. In Machek v. Seattle, 118 Wash. 42, 203 Pac. 25, the action was brought by the administrator of the estate of deceased minor. It was alleged that from the time of her injury until her death she endured pain and

suffering, and that, as the deceased was without issue, the action was brought in favor of the father and mother, who, at the time of the death, were dependent upon the child for support. Demurrer to the complaint was sustained. The Supreme Court considered the various statutes pertinent to the question of the right of action, and held that the administrator could maintain an action for the benefit of the parents to recover the amount that would have been contributed by the deceased to their support, such amount not being limited to what would have been furnished during the minority only, or that the parents themselves, whether dependent or not, could maintain an action in their own names for the loss of services of the minor from the time of the loss occurred until the minor would have arrived at her majority. The court then added:

"And in addition to either one of the foregoing actions under either sections 183 or 184, the administrator could maintain an action under section 194 in favor of the dependent parents for the damages suffered by the deceased from the time of the injury until death,"

and held that such action is entirely independent of actions under either section 183 or 184 and could be concurrently maintained with actions under either one of those sections.

The judgments are affirmed.